**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WALGREEN CO., <br><br> Plaintiff, <br><br> v. <br><br> ABP PATENT HOLDINGS, LLC <br><br> Defendant. | FILED <br> MARCH 25, 2008    YM <br> 08CV1726 <br> Case No.:  JUDGE MORAN <br> MAGISTRATE JUDGE COLE |

**WALGREEN CO.'S COMPLAINT**

Plaintiff Walgreen Co. ("Walgreen"), by and through its undersigned counsel, hereby submits its Complaint as follows:

**THE NATURE OF THE ACTION**

1.      This is a civil action for declaratory judgment of non-infringement, invalidity, and unenforceability of one or more claims of U.S. Patent Nos. 5,642,906 ("the '906 patent"), 5,855,395 ("the '395 patent"), 6,036,231 ("the '231 patent"), 6,715,796 ("the '796 patent"), and 7,225,052 ("the '052 patent") (collectively, "the ABP patents") arising under 35 U.S.C. §§ 1, *et seq.*, and 28 U.S.C. §§ 2201 and 2202.

**THE PARTIES**

2.      Walgreen is a corporation organized and existing under the laws of the state of Illinois, having its principal place of business at 200 Wilmot Road, Deerfield, Illinois.

3.      On information and belief, ABP Patent Holdings, LLC ("ABP") is a Florida limited liability company having its mailing address and registered agent at 1827 Wright Dr., Port Orange, Florida.

4.     On information and belief, Automatic Business Products Company, Inc. is a Florida corporation having its mailing address and registered agent in Port Orange, Florida.

5.     On information and belief, Automatic Business Products Company, Inc. is the sole manager of ABP.

6.     On information and belief, in or about March 2006, Automatic Business Products Company, Inc. was acquired by TimeMed Labeling Systems, Inc., an Illinois corporation having its principal place of business in Burr Ridge, Illinois.

7.     On information and belief, in or about June 2006, Centurion, Inc., an Illinois corporation having its principal place of business in Buffalo Grove, Illinois, acquired Automatic Business Products Company, Inc. from TimeMed Labeling Systems, Inc.

8.     On information and belief, ABP has licensed the ABP patents to entities doing business in Illinois and in this District, including TimeMed Labeling Systems, Inc.

9.     On information and belief, ABP has had significant business relationships with entities in the state of Illinois and in this District.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

11.     On or about December 27, 2007, ABP sent a letter to Walgreen in Illinois threatening Walgreen and asserting that Walgreen needs a license under the ABP patents.

12.     On or about August 21, 2000 ABP commenced a civil action by filing a Complaint in the Middle District of Florida against Convergent Label Technology, Inc. and Moore North America, Inc. alleging that they were infringing the '906, '395 and '231 patents ("the Florida Action").  The Florida Action case number was 6:00-cv-1087-Orl-22JGG.

2

13.     On information and belief, ABP has threatened others in the industry with the ABP patents.

14.     An actual justiciable controversy exists between Walgreen and ABP concerning the non-infringement, invalidity, and unenforceability of the ABP patents.

15.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b).  ABP transacts business within this District.  ABP has committed acts that are the subject of this Complaint within this District.  ABP has contacts in this District that are directly related to this cause of action.

16.     The United States District Court for the Northern District of Illinois has personal jurisdiction over ABP.  ABP threatened Walgreen in Illinois with the ABP patents.  ABP transacts business in Illinois and has contacts in Illinois that are directly related to this cause of action.

## ACTS GIVING RISE TO THE DECLARATORY JUDGMENT ACTION

17.     U.S. Patent 5,642,906 issued on July 1, 1997.  The '906 patent is assigned, on its face, to Automatic Business Products Company, Inc.  The '906 patent was reexamined by the U.S. Patent and Trademark Office ("PTO") and the PTO issued a reexamination certificate on July 20, 1999.  A copy of the '906 patent and reexamination certificate are attached as Exhibit A.

18.     U.S. Patent 5,855,395 issued on January 5, 1999.  The '395 patent is assigned, on its face, to Automatic Business Products, Inc.  A copy of the '395 patent is attached as Exhibit B.

19.     U.S. Patent 6,036,231 issued on March 14, 2000.  The '231 patent is assigned, on its face, to Automatic Business Products Company, Inc.  A copy of the '231 patent is attached as Exhibit C.

20.    U.S. Patent 6,715,796 issued on April 6, 2004.  The '796 patent is assigned, on its face, to ABP.  A copy of the '796 patent is attached as Exhibit D.

21.    U.S. Patent 7,225,052 issued on May 29, 2007.  The '052 patent is assigned, on its face, to ABP.  A copy of the '052 patent is attached as Exhibit E.

22.    Walgreen purchases its pharmacy labels from third party suppliers.

23.    Walgreen recently began using a new pharmacy label from a new supplier.

24.    Prior to the introduction of Walgreen's new pharmacy label, the suppliers of Walgreen's pharmacy label paid a patent license fee to ABP.

25.    The supplier of Walgreen's new pharmacy label does not pay a patent license fee to ABP.

26.    On December 27, 2007, ABP sent a letter to Walgreen claiming to be the owner of the '906, '395, '231, '796 and '052 patents.  The ABP letter threatened Walgreen and asserted that Walgreen and/or its supplier needed a patent license to the ABP patents for Walgreen's new pharmacy label.  A copy of that letter is attached hereto as Exhibit F.

27.    On August 21, 2000 ABP commenced a civil action by filing a Complaint in the Middle District of Florida against Convergent Label Technology, Inc. and Moore North America, Inc. alleging that they were infringing the '906, '395 and '231 patents ("the Florida Action").  The Florida Action case number was 6:00-cv-1087-Orl-22JGG.

28.    On information and belief, ABP has threatened others in the industry with the ABP patents.

29.    ABP has asserted rights under the ABP patents based on Walgreen's conduct, namely the use of Walgreen's new pharmacy label.  Walgreen has the right to engage in the threatened conduct and use its new pharmacy label.

30.    Through the statements made by ABP in its letters, as well as the commencement of legal actions, ABP has created an actual justiciable controversy between itself and Walgreen concerning whether Walgreen's new pharmacy label infringes any valid claim of the ABP patents.

**FIRST COUNT:  DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

31.    Walgreen incorporates herein the allegations as set forth in Paragraphs 1 through 30.

32.    Walgreen has not and will not infringe the ABP patents by manufacturing, offering for sale, selling, importing, or using Walgreen's pharmacy label in the United States, either literally or under the doctrine of equivalents.  Walgreen has not and will not induce or contribute to the infringement of the ABP patents.

**SECOND COUNT:  DECLARATORY JUDGMENT OF INVALIDITY**

33.    Walgreen incorporates herein the allegations as set forth in Paragraphs 1 through 32.

34.    The claims of the ABP patents are invalid under one or more provisions of Title 35, United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112.

**THIRD COUNT:  DECLARATORY JUDGMENT OF UNENFORCEABILITY**

35.    Walgreen incorporates herein the allegations as set forth in Paragraphs 1 through 34.

36.     The Defendants in the Florida Action asserted that the ABP patents were invalid and unenforceable because of "prior public use or sales, … prior art, allegations of 'fraud,' 'inequitable conduct,' and 'violation of duty of disclosure.'"

37.     The Defendants in the Florida Action asserted that the ABP patents were invalid and unenforceable in their answers, interrogatory responses, motions for summary judgment and other pleadings and responses.

38.     On July 5, 2001 Defendant Moore in the Florida Action asserted in its Amended Answer that:

> "Plaintiff's '906 patent, '395 patent and '231 patent are each unenforceable due to inequitable conduct during prosecution of the applications that lead to those patents before the U.S. Patent and Trademark Office (USPTO).  In particular, plaintiff failed to disclose that the alleged inventions claimed in their patents were disclosed to plaintiff by Walgreens and were not invented by Mr. Foote and Mr. Young; did not disclose the prior art Walgreens pharmacy labels to the USPTO, and did not disclose a July 1992 offer for sale of the invention made by plaintiffs to Walgreens."

39.     On August 23, 2001, Defendant Convergent in the Florida Action asserted in its Amended Answer that:

> "The '906 patent, '395 patent and '231 patent are each unenforceable due to inequitable conduct during prosecution of the applications that lead to those patents.  The Applicant failed to disclose that the alleged inventions claimed in these patents had been disclosed to Applicant by Walgreens and were not invented by Mr. Foote and Mr. Young; did not disclose the prior art Walgreens pharmacy labels to the USPTO; and did not disclose a July 1992 offer of sale of the invention made by Applicant to Walgreens.

40.     On December 3, 2001, the Defendants in the Florida Action filed and served their notice under 35 U.S.C. § 282.  The Defendants' 35 U.S.C. § 282 notice identified forty seven prior art references, including invalidating prior art from Drug Package, Inc., Walgreen and others.

41.     The Defendants in the Florida Action disclosed numerous prior art references to ABP that invalidate the claims of the ABP patents.  The Defendants in the Florida Action made ABP aware of invalidating prior art from Graphic Technology, Inc., Wal-Mart, Drug Package, Inc., Walgreen, ABP and others.

42.     The prior art from the Florida Action included a pharmacy label offered for sale and sold by Graphic Technology, Inc. to Wal-Mart on or around August 1992 (the "Wal-Mart prior art label").

43.     The prior art from the Florida Action included a pharmacy label that was offered for sale from ABP, or its predecessor, to Walgreen on or around July 1992 (the "ABP prior art label").

44.     On October 5, 2001 the Defendants in the Florida Action filed a motion for summary judgment asserting that the '906, '395 and '231 patents were invalid because, *inter alia,* ABP did not invent the claimed inventions.

45.     The Defendants in the Florida Action asserted that the ABP patents were not infringed.

46.     The Court in the Florida Action issued an order construing certain claims of the ABP patents that was contrary to the positions asserted by ABP.

47.     The Court in the Florida Action granted summary judgment of non-infringement against ABP.  The Court's order granting summary judgment was affirmed by the Federal Circuit Court of Appeals.

48.     The Court in the Florida Action did not decide the Defendants' motion for summary judgment of invalidity of the ABP patents because the Court held that it was moot in view of the Court's order granting summary judgment of non-infringement.

49.     On March 13, 2000, ABP filed U.S. Patent Application No. 09/525,268 ("the '268 application"), which was the patent application that resulted in the '796 patent.

50.     On April 5, 2004, ABP filed U.S. Patent Application No. 10/819,247 ("the '247 application"), which was the patent application that resulted in the '052 patent.

51.     The '268 application was pending during and after the Florida Action.

52.     ABP filed the '247 application after the Florida Action was terminated.

53.     The same law firm prosecuted ABP's '268 and '247 applications before the PTO and represented ABP in the Florida Action.

54.     The only information from the Florida Action that ABP disclosed during the prosecution of the '268 application was ABP's Opposition to the Defendants' motions for summary judgment of invalidity.  ABP therefore only disclosed its half of the story relating to the issues raised in the Defendants' summary judgment motions of invalidity.  ABP did not disclose the Defendants' motions or the testimony and evidence attached thereto.

55.     During prosecution of the '268 application, ABP did not disclose the prior art from Graphic Technology, Inc., Wal-Mart, Drug Package, Inc., Walgreen, ABP and others or the Defendants' allegation that ABP's patents were unenforceable.

56.     Neither ABP nor its attorneys of record disclosed to the PTO the existence of the Florida Action or any material from the Florida Action during the prosecution of the '247 application.

57.     Neither ABP nor its attorneys of record disclosed to the PTO during the prosecution of the '268 and '247 applications, any materials, other than the one self-serving ABP response identified above, from the Florida Action.

58.    ABP and its attorneys of record withheld from the PTO material information, including: (1) invalidating prior art from Graphic Technology, Inc., Wal-Mart, Drug Package, Inc., Walgreen, ABP and others, including but not limited to the Wal-Mart prior art label and the ABP prior art label; (2) the Defendants' assertion that the ABP patents were invalid because ABP did not invent the subject matter of the ABP patents; (3) the Defendants' assertion that the ABP patents were unenforceable due to failure to disclose, *inter alia*, prior art from Walgreen, ABP's offer for sale to Walgreen and that ABP did not invent the subject matter of the ABP patents; (4) the Defendants' summary judgment motions, interrogatory answers, expert reports, claim construction briefs, and other pleadings and responses; and (5) the Court's claim construction and summary judgment order.

59.    A patent applicant has a duty to disclose to the United States Patent and Trademark Office ("PTO") any information that is material to the patentability of claims that the applicant is pursuing. *See* 37 C.F.R. § 1.56. The duty of disclosure extends to the applicant, owner and attorneys prosecuting the patent application on behalf of an applicant.

60.    Material information includes the existence of, and information arising from, litigation related to the subject matter of the patent claims that an applicant is pursuing.

61.    Section 2001.06(c) from the PTO's Manual of Patent Examining Procedure states, *inter alia*:

> Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the U.S. Patent and Trademark Office. Examples of such material information include evidence of possible prior public use or sales, questions of inventorship, prior art, allegations of "fraud," "inequitable conduct," and "violation of duty of disclosure." Another example of such material information is any assertion that is made during litigation which is contradictory to assertions made to the examiner. *Environ Prods., Inc. v. Total*

*Containment, Inc.*, 43 USPQ2d 1288, 1291 (E.D. Pa. 1997). Such information might arise during litigation in, for example, pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony.

62.     In failing to bring all of the information from the Florida Action (except for one self-serving ABP response) to the attention of the PTO, ABP and/or its attorneys or agents intended to deceive the PTO and committed inequitable conduct with regard to the '796 and '052 patents.

## RELIEF REQUESTED

WHEREFORE, Walgreen requests entry of judgment:

A.     declaring that Walgreen's pharmacy labels do not and will not infringe any claim of United States Patent Nos. 5,642,906, 5,855,395, 6,036,231, 6,715,796, and 7,225,052;

B.     declaring that each and every claim of United States Patent Nos. 5,642,906, 5,855,395, 6,036,231, 6,715,796, and 7,225,052 are invalid;

C.     declaring that United States Patent Nos. 6,715,796 and 7,225,052 are unenforceable;

D.     declaring that ABP and its officers, agents, employees, representatives, counsel and all persons in active concert or participation with any of them, directly or indirectly, be enjoined from threatening or charging infringement of, or instituting any action for infringement of United States Patent Nos. 5,642,906, 5,855,395, 6,036,231, 6,715,796, and 7,225,052 against Walgreen; and

E.     finding that ABP's actions in this matter warrant a holding that this is an exceptional case under 35 U.S.C. § 285, and awarding to Walgreen its reasonable fees and costs (including attorneys fees) incurred in this action; and granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated:  March 25, 2008

/s/ John L. Abramic

Timothy J. Malloy
James R. Nuttall
John L. Abramic
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois  60661
Telephone:  (312) 775-8000
Facsimile:  (312) 775-8100

**ATTORNEYS FOR PLAINTIFF
WALGREEN CO.**



# United States Patent [19]

**Foote et al.**

[11] **Patent Number:** 5,642,906

[45] **Date of Patent:** Jul. 1, 1997

[54] **METHOD OF LABELLING PRESCRIPTION CONTAINERS**

[75] Inventors: **Richard W. Foote**, Daytona Beach; **Richard Young**, Bradenton, both of Fla.

[73] Assignee: **Automatic Business Products Company, Inc.**, New Smyrna Beach, Fla.

[21] Appl. No.: **504,765**

[22] Filed: **Jul. 20, 1995**

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 121,415, Sep. 16, 1993, abandoned.

[51] Int. Cl.⁶ .................................................... **B42D 15/00**
[52] U.S. Cl. ........................... **283/67**; 283/70; 283/81; 283/101; 283/105; 283/900; 281/2; 281/5; 428/43
[58] **Field of Search** ............................. 283/81, 101, 105, 283/79, 900, 67, 70, 74; 428/43, 42.1; 40/310, 306, 638, 299; 281/2, 5; 206/570

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,625,547 | 12/1971 | Burke . | |
| 3,869,333 | 3/1975 | McMaster | 428/56 |
| 3,993,814 | 11/1976 | Cavender | 281/5 X |
| 4,159,129 | 6/1979 | Lockhart . | |
| 4,189,053 | 2/1980 | Stagnitto et al. . | |
| 4,277,089 | 7/1981 | Lockhart . | |
| 4,637,635 | 1/1987 | Levine | 283/101 |
| 4,799,712 | 1/1989 | Biava et al. . | |
| 4,875,174 | 10/1989 | Olodort et al. . | |
| 4,876,131 | 10/1989 | Ashby et al. | 281/5 X |
| 4,918,604 | 4/1990 | Baum . | |
| 4,972,657 | 11/1990 | McKee . | |
| 5,031,939 | 7/1991 | Webendorfer et al. . | |
| 5,046,609 | 9/1991 | Mangini et al. | 40/310 X |
| 5,048,870 | 9/1991 | Mangini et al. . | |
| 5,129,682 | 7/1992 | Ashby . | |
| 5,147,699 | 9/1992 | Browning et al. . | |
| 5,178,419 | 1/1993 | Bolnick et al. | 283/81 |
| 5,182,152 | 1/1993 | Ericson . | |
| 5,271,642 | 12/1993 | Jahier et al. . | |
| 5,328,208 | 7/1994 | Garrison . | |
| 5,413,383 | 5/1995 | Laurash et al. | 283/81 X |
| 5,435,600 | 7/1995 | Griffiths et al. | 283/81 |

*Primary Examiner—Frances Han*
*Attorney, Agent, or Firm—Alfred H. Hemingway, Jr.*

[57] **ABSTRACT**

A printer blank for a computer system printer is disclosed. The blank has a contiguous pressure adhesive backed label section and may also have a larger plain paper section separated from the label section by a perforation line. The label section is comprised of a plurality of adhesive backed labels and a backing sheet, including a main label portion and at least one smaller auxiliary label. A preferred blank comprises a plurality of auxiliary labels. In use, at least one, but preferably not all, of the auxiliary labels on such a preferred blank are simultaneously removed from the backing sheet with the main label portion. Any auxiliary label(s) simultaneously removed with the main label but not printed upon are readily separated from the main label.

**8 Claims, 4 Drawing Sheets**



08CV1726

JUDGE MORAN    YM

MAGISTRATE JUDGE COLE



*F/G.  1*

50    64
52    56    66    82

70

88    96

92    110

86    98 ~ 112
100 ~ 114
94    102 ~ 116
104 ~ 118
74    120    106
78    108

76

90    122

124    126

3    3

60    58    70    62

*FIG. 2*



52
82    122
70    66
84
72    80
64    74    68    54

*FIG. 3*

FIG.4



FIG. 5

FIG. 6

FIG. 7

FIG. 8

1

## METHOD OF LABELLING PRESCRIPTION CONTAINERS

This application is a continuation-in-part of application Ser. No. 08/121,415, filed Sep. 16, 1993, now abandoned, which is hereby fully incorporated by reference.

This invention relates to paper blanks for use with a printer in a computer system, and in particular relates to a compound paper blank to be printed on by a computer printer.

Labels having pressure sensitive adhesive have been applied to drug containers for a long time by the pharmaceutical industry to identify the customer, the doctor, the drug being dispensed, and the frequency of the dosage. These labels usually can be purchased in bundles that can be fed into a computer driven printer. The information to be printed on one of the labels is either typed into the computer using a conventional pharmacy computer program or is retrieved from a stored record having been previously typed into the computer memory using the pharmacy computer program. Such a computer program also has automatically printed out receipts for the customer and records for the pharmacy.

The pharmaceutical industry has also been applying oblong or rectangular warning labels to the drug containers for some time. These warning labels warn the customer about certain events or provide instructions involving the prescribed drug. For example, a warning label may carry the message:

MAY CAUSE DROWSINESS; ALCOHOL MAY INTENSIFY THIS EFFECT. USE CARE WHEN OPERATING A CAR OR DANGEROUS MACHINERY.

The warning labels have been supplied to the pharmaceutical industry for some time in rolls of the same message.

Pharmacies have also been supplying customers with an instruction sheet containing information about the drugs they are purchasing. One type of such labels carry the brand name PAL (Patient Advisory Leaflet).

The prior art also contains references which teach the use of a computer system to generate prescription labels printed by a computer driven printer. Such references include the following U.S. patents, which are incorporated herein by reference: Baum U.S. Pat. No. 4,918,604; Olodort et al. U.S. Pat. No. 4,875,174; and McKee U.S. Pat. No. 4,972,657. The prior art also contains references which disclose a manual form having an adhesive label portion used in combination for record keeping and generating a label to be applied to a drug container. Examples of U.S. patents, which are incorporated herein by reference, disclosing such forms are the Lockhart patents U.S. Pat. Nos. 4,277,089 and 4,159,129; and the Biava et al. patent U.S. Pat. No. 4,799,712.

However, there is no known prior art reference which provides a blank for a computer printer that contains portions for both a removable prescription drug label and a removable warning label with portions for other printed information. Such a system would reduce package costs, provide greater flexibility, and be compatible with existing computer software used by pharmacies.

Accordingly the present invention is designed to provide a multi-part blank which can be fed in a computer driven printer and when printed, will contain all of the parts needed for a complete set. Such a set contains a peelable vial label having a pressure sensitive adhesive connected to removable strips of computer selected warning labels also having a pressure sensitive adhesive. The set also contains portions for printed information needed by both the pharmacy and the customer.

2

The present invention provides a printer blank which can cut expenses, reduce errors, and cut time in preparing records and drug containers for customers. In one particular embodiment of the invention, a single sheet of multisectional paper blank can be fed into a laser printer and on that one sheet there will be printed a drug advisory leaflet; no, one or more than one warning labels having a pressure sensitive adhesive on its back side for easy application to a drug container, and a drug container label containing drug, customer, and pharmacy information. This blank in one pass through the laser printer contains all of the necessary records and parts for the entire drug transaction.

According to one embodiment, the present invention comprises a blank for use with a printer for printing information and labels for drug containers. The blank comprises a sheet of a material having a front side that can be printed on with the printer, a back side, a top and bottom edge which together define a generally horizontal direction, and two side edges which together define a generally vertical direction. The sheet includes at least a first portion and a second portion divided by a first, generally vertically extending tear line or tear line that extends from the top edge to the bottom edge. In the first portion the printer prints text about the particular drug being prescribed, and in the second portion, which includes a label laminate divided into a first section and a second section by a generally horizontal, second tear line. The second section is further divided into a plurality of horizontal strips by at least two generally horizontal tear lines which extend from the first tear line to one of the side edges of the blank. The laminate is comprised of a backing sheet, a removable label sheet having a front side that can be printed on with the printer and a back side, and a pressure-type adhesive on the back side of said label sheet.

Other advantages, features, and details of the present invention will be set forth in or apparent from the detailed description thereof contained hereinbelow.

FIG. 1 is an electronic block diagram of a prototype computer system used to demonstrate the present invention;

FIG. 2 is a plan view of a blank in accordance with the present invention before it has been printed on;

FIG. 3 is an enlarged, not-to-scale, cross-sectional view taken along lines 3—3 of FIG. 2 in which certain layers have been shown thicker in order to depict the details of construction;

FIG. 4 is a plan view of a blank that has indicia printed on it by a computer driven laser printer;

FIGS. 5, 6 and 8 are plan views of other blanks in accordance with the present invention; and

FIG. 7 is an enlarged, not-to-scale, cross-sectional view taken along lines 7—7 of FIG. 6 in which certain layers have been shown thicker in order to depict the details of construction.

With reference now to the drawings in which like numerals are used to represent like elements throughout the several views, and in particular with reference to FIG. 1, a computer system 10 is depicted for generating a completed form such as shown in FIG. 4. Computer system 10 is comprised of a conventional host computer 12 having a conventional keyboard 14 for the manual input of information, a conventional computer monitor 16 for the output of information and a conventional external memory 18, which can be a conventional hard disk system. Host computer 12 has an input/output port 20 and can be an IBM compatible computer type using an INTEL brand 80486 DX microprocessor with 8 Mega-bytes of internal memory. Memory 18 holds a number of data bases, such as a customer data base containing customer information and a store data base containing the

5,642,906

3

pharmacy's inventory control information. Memory 18 also holds a conventional pharmaceutical computer program. The program is used by pharmacies to generate the customer data base and store data base, and to extract information contained in these data bases and combine it with information entered from keyboard 14 by a pharmacist to produce an output to drive a printer to print a conventional drug label.

Connected to host computer through input/output port 20 is a supplemental computer 22. Supplemental computer 22 can be identical in configuration to host computer 12. Connected to supplemental computer 22 is a conventional external memory 24 and a conventional laser printer 26, such as a Hewlett-Packard model Series 2 laser printer. Stored in memory 24 are an NDC (National Drug Code) data base containing a standardized drug code list, a data base containing information for the customer about each prescribed drug, such as the commercially available C-PAL® data base, and a data base of warning labels, including unique logos and icons (see, for example, FIG. 4). Also contained in memory 24 is a program which permits supplemental computer to intercept the printer information from host computer 12, to reformat the information, to enter the C-PAL® and warning label data bases to get the related information, and to regenerate the printer information with the incorporated C-PAL® and warning label information.

Computer system 10 is depicted in FIG. 1 as having two computers and it is so configured because it has been designed to complement, upgrade and modify an existing pharmacy computer system that has been using commercially available software. However, an alternative embodiment of the invention (not depicted) is implemented on, or includes, a single computer system in which supplemental computer 22 is combined with host computer 12, supplemental computer memory 24 is combined with host computer memory 18, and a single computer program is used both for the conventional pharmacy inventory control, accounting and report generating tasks and for the printing of a completed form, such as depicted in FIG. 4.

A blank or form 50 in accordance with the present invention is depicted in FIGS. 2 and 3. Blank 50 is preferably made from a flexible, conventional stock material. Blank 50 has a front side 52 which can receive and retain "ink" or print from printer 26 and a back side 54 (FIG. 3). As shown in FIG. 2, blank 50 has a top edge 56 and a bottom edge 58 parallel thereto which are arbitrarily used to define the horizontal direction in blank 50. Blank 50 also has a left side 60 and a right side 62 parallel thereto which are arbitrarily used to define the vertical direction in blank 50. In a presently preferred embodiment, blank 50 is made of paper and is essentially a square with each side having a length of 8.5 inches (21.59 cm). Alternatively, blank 50 can be made from a plastic or other thin sheet material which can be printed on.

Blank 50 is comprised of a first sheet 64 and a second sheet 66 which have respective overlapping strips 68 and 70 that are adhered to one another with a conventional heat set adhesive 72, as shown in FIG. 3.

Strip 68 is defined not only by its overlapping strip 70, but also by a vertically extending tear line 74 that extends from top edge 56 to bottom edge 58. Tear line 74 can be a score line, but preferably is a perforation line with the perforations extending completely through first sheet 64. Thus, as seen on front side 52 of blank 50, it can also be said that tear line 74 divides blank 50 into a first portion 76, which is coextensive with first sheet 64 less strip 68, and a second portion 78 which is coextensive with second sheet 66 including strip 70.

4

As depicted in FIG. 3, second sheet 66 is comprised of a laminate and has a backing 80 and a paper top layer 82. Backing 80 in the presently preferred embodiment is a paper product having an embedded plastic top portion or coated with a plastic film (not shown). Attached to the underside of top layer 82 is a conventional pressure adhesive 84. By appropriately selecting top layer 82, adhesive 84 and backing 80, adhesive 84 removably adheres top layer 82 to backing 80, and after top layer 82 is removed from said backing sheet is able to adhere more permanently top layer 82 to a container (not shown), which can be a conventional plastic bottle in which drugs are dispensed.

As seen in FIG. 2, when viewed together with FIG. 4, first portion 76 is much larger in the horizontal direction than second portion 78. In a presently preferred embodiment, first sheet has a width of 6⅝th inches (16.83 cm) and first portion 76 has a width of 6⅜ inches (16.19 cm). First portion 76 is divided into three sections, 86, 88 and 90 by a vertical tear line 92 and by a short horizontal tear line 94. Tear line 92 is a perpendicular bisector of tear line 92, which is parallel to tear line 74 and similarly extends from top edge 56 to bottom edge 58. In a preferred embodiment of the invention, tear lines 92 and 94 are perforation lines with the perforation extending completely through first sheet 64. As shown in FIG. 4, section 86 is the largest section and is used to contain the text of a Patient Advisory Leaflet. Sections 88 and 90 are obviously of equal size and they are each used to contain the text of a customer receipt which can be used for financial records.

Second portion 78 is divided into a plurality of vertically arranged portions by a plurality of horizontal tear lines. In the present embodiment there are seven such portions denoted 96, 98, 100, 102, 104, 106 and 108 created by six tear lines 110, 112, 114, 116, 118, and 120. In a preferred embodiment, tear lines 110, 112, 114, 116 and 120 extend only through top layer 82 and attached layer of adhesive 84 and are perforation lines. On the other hand, tear line 118 in a preferred embodiment is a perforation line with the perforations extending completely through second sheet 66. Portion 96 is a wrap-around label to be applied to a drug container. Portions 98, 100, 102 and 104 are four blanks, none, some or all of which may be used to contain design and word indicia representing warning labels to be applied to a drug container. Portion 106 is unused filler.

Portion 108 is vertically bisected by a vertical tear line 122 to create vertically extending parts 124 and 126. In a preferred embodiment, tear line 122 is a perforation line with the perforations extending completely through second sheet 66. Part 124 is used to obtain a third party signature and also to contain information about the particular prescription. Part 126 can be used as an adhesive pharmacy record label to be applied to an appropriate ledger page (not shown).

The advantages to having tear lines 74, 92, 94, 118 and 122 extend completely through their respective sheets 64 and 66 is that blank 50 can be easily and quickly divided into five portions, each with an entirely different purpose. Portions 86 (the patient advisory leaflet), 88 and 90 are adhesive free and are given to the customer. Combined portions 96, 98, 100, 102 104 contain indicia having the information necessary for the container of the drug being dispensed, and the adhesive top layer 82 can be removed as one piece from backing 80, the unused warning label portions removed, and the remaining piece applied to the drug container. Finally, adhesive parts 124 and 126 can be selectively removed from their piece of backing 80 and applied to the appropriate pharmacy ledger.

5

6

The number of warning label blanks provided is somewhat arbitrary, except that based upon prior experience most druggist do not select more than four such labels for any particular drug. Obviously, the number of blanks could be larger or smaller if necessary, and the unused blanks would be separated and discarded before the drug label, portion 98, and used warning labels, portions 98, 100, 102 and 104 are applied.

In an alternative embodiment, portion 108 could be divided into three vertically extending parts by two tear lines so that the signature section could be separated from the pharmacy record label.

The further embodiments depicted in FIGS. 5–8 may be used alone as illustrated or as alternative portions of the particular embodiment described above.

The FIG. 5 embodiment comprises a main label 200 and auxiliary labels 210 to 213. Auxiliary labels 210 to 213, which are horizontally disposed with respect to main label 200, are horizontally separated from each other and from other portions of the blank by way of knife or die cuts 220 to 224 and vertically from other portions of the blank by way of knife or die cuts 230 to 233, which knife or die cuts extend through the adhesive layer but not through the backing layer. At least one of lines 240 to 243 is a perforation line extending to but not through the backing line, such that at least one of auxiliary labels 210 to 213 is separated from the backing sheet simultaneously with the removal of main label 200 from the backing sheet. Any of lines 240 to 243 which are not perforation lines, if any, are knife or die cuts extending to the backing sheet, such that the respective auxiliary labels are completely separated from each other as well as from any other portions of the blank.

The embodiment of FIGS. 6 and 7 differs from the FIG. 5 embodiment in that auxiliary labels 310 to 313 are vertically rather than horizontally disposed with respect to the main label 300. Thus each of lines 320 to 328 is a knife or die cut extending through adhesive 84 to but not through backing sheet 80, at least line 330 of lines 330 to 333 is a perforation line extending to but not through back sheet 80, and any of lines 331 to 333 which are not perforation lines, if any, are knife or die cuts extending to but not through the backing sheet, such that any respective auxiliary label is completely separated, and therefore separately removable, from any other portion of the blank. With such a construction, at least one but optionally up to all of the auxiliary labels may be removed from the backing sheet simultaneously with the main label and any unused but removed auxiliary labels, if any, may be subsequently and easily separated from the main and/or used auxiliary label (s). In a preferred embodiment of the FIGS. 6 and 7 embodiment, lines 330 and 331 are perforated lines and lines 332 and 333 are die cuts, such that two auxiliary labels 310 and 311 are simultaneously removed from back sheet 80 with main label 302.

The embodiment of FIG. 8 illustrates a blank 400 of which the blank of the FIG. 6 embodiment is one component 410. Additional components 415 and 420 of the FIG. 8 embodiment are additional separately removable adhesive labels.

As described in detail above, in carrying out a method of labeling utilizing blank forms according to the invention, the user causes the desired information to be printed on the main label and, optionally, on one or more auxiliary labels, simultaneously removes the printed main label and at least one auxiliary label from the backing sheet, separates any simultaneously removed but unused auxiliary label(s), and simultaneously applies the main label and any remaining, i.e., used, auxiliary label(s) to another surface. When used in a pharmacy application as a labeling system for prescription

drugs, any used auxiliary labels comprise warning labels to the user of the drug dispensed in the container to which the labels are affixed.

Thus, the present invention has been described with reference to the drawings with respect to presently preferred embodiments. As such, the present invention permits, for example, the existing computer system of a pharmacy to execute a label set as usual while the software of the present invention adds information by which laser printer 26 will print any warning labels and an advisory leaflet corresponding to the drug being dispensed. The one piece wrap-around pressure sensitive label for the drug container optionally combines the main drug container label with one or more selected warning labels.

Other modifications and enhancements of the present invention would be obvious to those skilled in the art.

We claim:

1. A method for use by a pharmacist in labeling a container for a prescription drug to be dispensed to a customer, comprising the steps of:

I. providing blank form for printing on at least one label to be affixed to the container, the form comprising:

(a) at least two labels releasably adhered to a backing sheet, each of said labels being provided with a printable surface upon which may be printed information relating to the prescription drug;

(b) adhesive means on the surface of each of said labels that is opposite the printable surface for affixing said labels to said container; and

(c) means for connecting said labels such that:

(1) the removal of one of the labels from the backing sheet will simultaneously remove from the backing sheet the other label to which it is connected; and

(2) the two removed labels optionally may be readily separated from each other prior to affixing any of said labels to said container;

II. printing information concerning a prescription on at least one of said labels;

III. simultaneously removing from the backing sheet at least said two labels; and

IV. affixing at least one of said two labels to said prescription drug container.

2. The method of claim 1, wherein the provided blank form includes a label adapted to receive printed information identifying at least the customer and the prescription drug.

3. The method of claim 2, in which one of said two connected labels is adapted to receive printed information identifying at least the customer and the prescription drug.

4. The method of claim 3, in which the other of said two connected labels is adapted to receive printed information comprising a warning relating to the prescribion drug.

5. The method of claim 1, in which least at one of said two connected labels is adapted to receive printed information comprising a warning relating to the prescribion drug.

6. The method of claim 1, including the step of simultaneously affixing at least two labels removed from the backing sheet to the container.

7. The method of claim 1, including the step of separating at least one connected label from at least one remaining connected label prior to affixing said at least one remaining label to the container.

8. The method of claim 1, including the step of affixing all of the connected labels simultaneously removed from the backing sheet to the container.

* * * * *

# REEXAMINATION CERTIFICATE (3817th)

## United States Patent [19]

### Foote et al.

[11] **B1 5,642,906**

[45] Certificate Issued **Jul. 20, 1999**

[54] **METHOD OF LABELLING PRESCRIPTION CONTAINERS**

[75] Inventors: **Richard W. Foote**, Daytona Beach; **Richard Young**, Bradenton, both of Fla.

[73] Assignee: **Automatic Business Products Co., Inc.**, New Smyrna Beach, Fla.

**Reexamination Request:**
No. 90/005,014, Jun. 11, 1998

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | **5,642,906** |
| Issued: | **Jul. 1, 1997** |
| Appl. No.: | **08/504,765** |
| Filed: | **Jul. 20, 1995** |

### Related U.S. Application Data

[63] Continuation-in-part of application No. 08/121,415, Sep. 16, 1993, abandoned.

[51] Int. Cl.[6] ............................................. **B42D 15/00**

[52] U.S. Cl. ................................. **283/67**; 283/70; 283/81; 283/101; 283/105; 283/900; 281/2; 281/5; 428/43

[58] Field of Search ................................ 283/67, 70, 81, 283/101, 105, 900, 79, 74; 428/43, 42.1; 40/310, 306, 638, 299; 281/2, 5; 206/570

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| Re. 30,958 | 6/1982 | White . |
| 3,484,976 | 12/1969 | Shea . |
| 3,625,547 | 12/1971 | Burke . |
| 3,869,333 | 3/1975 | McMaster .................................. 428/56 |
| 3,993,814 | 11/1976 | Cavender ................................ 281/5 X |
| 4,156,539 | 5/1979 | Davidson et al. . |
| 4,159,129 | 6/1979 | Lockhart . |
| 4,189,053 | 2/1980 | Stagnitto et al. . |
| 4,277,089 | 7/1981 | Lockhart . |
| 4,312,523 | 1/1982 | Haines . |
| 4,637,635 | 1/1987 | Levine ..................................... 283/101 |
| 4,799,712 | 1/1989 | Biava et al. . |
| 4,875,174 | 10/1989 | Olodort et al. . |
| 4,876,131 | 10/1989 | Ashby et al. ........................... 281/5 X |
| 4,918,604 | 4/1990 | Baum . |
| 4,972,657 | 11/1990 | McKee . |
| 5,031,939 | 7/1991 | Webendorfer et al. . |
| 5,046,609 | 9/1991 | Mangini et al. ...................... 40/310 X |
| 5,048,870 | 9/1991 | Mangini et al. . |
| 5,129,682 | 7/1992 | Ashby . |
| 5,147,699 | 9/1992 | Browning et al. . |
| 5,178,419 | 1/1993 | Bolnick et al. .......................... 283/81 |
| 5,182,152 | 1/1993 | Ericson . |
| 5,271,642 | 12/1993 | Jahier et al. . |
| 5,328,208 | 7/1994 | Garrison . |
| 5,413,383 | 5/1995 | Laurash et al. ...................... 283/81 X |
| 5,435,600 | 7/1995 | Griffiths et al. .......................... 283/81 |

#### OTHER PUBLICATIONS

CVS/Phramacy Label and Bill of Lading, Apr. 1987.

*Primary Examiner*—Frances Han

[57]    **ABSTRACT**

A printer blank for a computer system printer is disclosed. The blank has a contiguous pressure adhesive backed label section and may also have a larger plain paper section separated from the label section by a perforation line. The label section is comprised of a plurality of adhesive backed labels and a backing sheet, including a main label portion and at least one smaller auxiliary label. A preferred blank comprises a plurality of auxiliary labels. In use, at least one, but preferably not all, of the auxiliary labels on such a preferred blank are simultaneously removed from the backing sheet with the main label portion. Any auxiliary label(s) simultaneously removed with the main label but not printed upon are readily separated from the main label.



B1 5,642,906

1

# REEXAMINATION CERTIFICATE ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS INDICATED BELOW.

Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

Claims **1**, **4** and **6** are determined to be patentable as amended.

Claims **2**, **3**, **5**, **7** and **8**, dependent on an amended claim, are determined to be patentable.

New claims **9**, **10** and **11** are added and determined to be patentable.

**1**. A method for use by a pharmacist in labeling a container for a prescription drug to be dispensed to a customer, comprising the steps of:

I. providing *a* blank form for printing on at least one label to be affixed to the container, the form comprising:

(a) at least two labels releasably adhered to a backing sheet, each of said labels being provided with a printable surface upon which may be printed information relating to the prescription drug;

(b) adhesive means on the surface of each of said labels that is opposite the printable surface for affixing *each of* said labels to said container; and

(c) means for connecting said labels such that:

(1) the removal of one of the labels from the backing sheet will simultaneously remove from the backing sheet [the] *an*other label to which it is connected; and

(2) the two removed labels optionally may be readily separated from each other prior to affixing any of said labels to said container;

II. printing information concerning a prescription on at least one of said labels;

III. simultaneously removing from the backing sheet at least said two labels; and

IV. affixing at least one of said two labels to said prescription drug container.

2

**4**. [The] *A* method [of claim **3**, in which the other of said two connected labels is adapted to receive printed information comprising a warning relating to the prescription drug] *for use by a pharmacist in labeling a container for a prescription drug to be dispensed to a customer, comprising the steps of:*

*providing a blank form for printing on at least one label to be affixed to the container, the form comprising:*

*(a) at least two labels releasably adhered to a backing sheet, each of said labels being provided with a printable surface upon which may be printed information relating to the prescription drug;*

*(b) adhesive means on the surface of each of said labels that is opposite the printable surface for affixing each of said labels to said container; and*

*(c) means for connecting said labels such that:*

*(1) the removal of one of the labels from the backing sheet will simultaneously remove from the backing sheet another label to which it is connected; and*

*(2) the removed labels optionally may be readily separated from each other prior to affixing any of said labels to said container;*

*printing information identifying the customer and the prescription drug on one of said connected labels;*

*printing information comprising a warning relating to the prescription drug on at least one of the other connected labels;*

*simultaneously removing from the backing sheet at least two of said connected labels; and*

*affixing at least one of said two labels to said prescription drug container.*

**6**. The method of claim **1**, including the step of simultaneously affixing [at least] *the* two *connected* labels [removed from the backing sheet] to the container *after removal from the backing sheet.*

*9. The method recited in claim 4, wherein the blank form further comprises means indicating a separation line between each connected label.*

*10. The method recited in claim 9, wherein the separation line comprises a perforation line between the connected labels.*

*11. The method recited in claim 10 further comprising the step of extending the perforation line between the connected label so as to permit removing of the connected labels together from the backing sheet and thereafter separating of the connected labels following removal from the backing sheet and prior to affixing any label to the container.*

\* \* \* \* \*

# United States Patent [19]

## Foote et al.

[11] **Patent Number:** 5,855,395

[45] **Date of Patent:** *Jan. 5, 1999

[54] **PHARMACY LABEL AND RECORD SYSTEM AND METHOD**

[75] Inventors: **Richard W. Foote**, New Smyrna Beach; **Richard Young**, Bradenton, both of Fla.

[73] Assignee: **Automatic Business Products, Inc.**, New Smyrna Beach, Fla.

[ * ] Notice: The term of this patent shall not extend beyond the expiration date of Pat. No. 5,642,906.

[21] Appl. No.: **867,965**

[22] Filed: **Jun. 3, 1997**

### Related U.S. Application Data

[63] Continuation of Ser. No. 504,765, Jul. 20, 1995, Pat. No. 5,642,906, which is a continuation-in-part of Ser. No. 121, 415, Sep. 16, 1993, abandoned.

[51] **Int. Cl.6** .................................................. **B42D 15/00**
[52] **U.S. Cl.** ................................. **283/67**; 283/70; 283/81; 283/101; 283/105; 283/900; 281/2; 281/5; 428/43
[58] **Field of Search** ................................. 283/67, 70, 74, 283/79, 81, 101, 105, 900; 428/42.1, 43; 40/310, 306, 638, 299; 281/2, 5; 206/570

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

Re. 30,958   6/1982   White .

3,484,976   12/1969   Shea .
4,156,539    5/1979   Davidson et al. .
4,312,523    1/1982   Haines .
5,129,682    7/1992   Ashby .
5,147,699    9/1992   Browning et al. .

### OTHER PUBLICATIONS

CVS Pharmacy Label and Apr. 14, 1997 invoice from Moore Business Forms.

*Primary Examiner*—Frances Han
*Attorney, Agent, or Firm*—Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.

[57] **ABSTRACT**

A printer blank for a computer system printer is disclosed. The blank has a contiguous pressure adhesive backed label section and may also have a larger plain paper section separated from the label section by a perforation line. The label section is comprised of a plurality of adhesive backed labels and a backing sheet, including a main label portion and at least one smaller auxiliary label. A preferred blank comprises a plurality of auxiliary labels. In use, at least one, but preferably not all, of the auxiliary labels on such a preferred blank are simultaneously removed from the backing sheet with the main label portion. Any auxiliary label(s) simultaneously removed with the main label but not printed upon are readily separated from the main label.

**23 Claims, 4 Drawing Sheets**



08CV1726

JUDGE MORAN        YM

MAGISTRATE JUDGE COLE





*FIG. 1*

50

64

52

56

66

82

88

70

96

92

110

98     112

86

94

100     114

102     116

104     118

74

120     106

76

78     108

90

122

124     126

3     3

60     58

70

62

FIG. 2



52

82     122

70

66

84

80

64     74     68     72     54

FIG. 3



FIG.4



1

# PHARMACY LABEL AND RECORD SYSTEM AND METHOD

This application is a continuation of application Ser. No. 08/504,765 filed Jul. 20, 1995, now U.S. Pat. No. 5,642,906 which is a continuation-in-part of Application Ser. No. 08/121,415 filed Sep. 16, 1993, now abandoned.

## FIELD OF THE INVENTION

This invention relates to paper blanks for use with a printer in a computer system, and in particular relates to a compound paper blank to be printed on by a computer printer.

## BACKGROUND OF THE INVENTION

Labels having pressure sensitive adhesive have been applied to drug containers for a long time by the pharmaceutical industry to identify the customer, the doctor, the drug being dispensed, and the frequency of the dosage. These labels usually can be purchased in bundles that can be fed into a computer driven printer. The information to be printed on one of the labels is either typed into the computer using a conventional pharmacy computer program or is retrieved from a stored record having been previously typed into the computer memory using the pharmacy computer program. Such a computer program also has automatically printed out receipts for the customer and records for the pharmacy.

The pharmaceutical industry has also been applying oblong or rectangular warning labels to the drug containers for some time. These warning labels warn the customer about certain events or provide instructions involving the prescribed drug. For example, a warning label may carry the message:

> MAY CAUSE DROWSINESS; ALCOHOL MAY INTENSIFY THIS EFFECT. USE CARE WHEN OPERATING A CAR OR DANGEROUS MACHINERY.

The warning labels have been supplied to the pharmaceutical industry for some time in rolls of the same message.

Pharmacies have also been supplying customers with an instruction sheet containing information about the drugs they are purchasing. One type of such labels carry the brand name PAL (Patient Advisory Leaflet).

The prior art also contains references which teach the use of a computer system to generate prescription labels printed by a computer driven printer. Such references include the following U.S. patents, which are incorporated herein by reference: Baum U.S. Pat. No. 4,918,604; Olodort et al. U.S. Pat. No. 4,875,174; and McKee U.S. Pat. No. 4,972,657. The prior art also contains references which disclose a manual form having an adhesive label portion used in combination for record keeping and generating a label to be applied to a drug container. Examples of U.S. patents, which are incorporated herein by reference, disclosing such forms are the Lockhart patents U.S. Pat. No. 4,277,089 and U.S. Pat. No. 4,159,129; and the Biava et al. patent U.S. Pat. No. 4,799,712.

However, there is no known prior art reference which provides a blank for a computer printer that contains portions for both a removable prescription drug label and a removable warning label with portions for other printed information. Such a system would reduce package costs, provide greater flexibility, and be compatible with existing computer software used by pharmacies.

## SUMMARY OF THE INVENTION

Accordingly the present invention is designed to provide a multi-part blank which can be fed in a computer driven

2

printer and when printed, will contain all of the parts needed for a complete set. Such a set contains a peelable vial label having a pressure sensitive adhesive connected to removable strips of computer selected warning labels also having a pressure sensitive adhesive. The set also contains portions for printed information needed by both the pharmacy and the customer.

The present invention provides a printer blank which can cut expenses, reduce errors, and cut time in preparing records and drug containers for customers. In one particular embodiment of the invention, a single sheet of multisectional paper blank can be fed into a laser printer and on that one sheet there will be printed a drug advisory leaflet; no, one or more than one warning labels having a pressure sensitive adhesive on its back side for easy application to a drug container, and a drug container label containing drug, customer, and pharmacy information. This blank in one pass through the laser printer contains all of the necessary records and parts for the entire drug transaction.

According to one embodiment, the present invention comprises a blank for use with a printer for printing information and labels for drug containers. The blank comprises a sheet of a material having a front side that can be printed on with the printer, a back side, a top and bottom edge which together define a generally horizontal direction, and two side edges which together define a generally vertical direction. The sheet includes at least a first portion and a second portion divided by a first, generally vertically extending tear line or tear line that extends from the top edge to the bottom edge. In the first portion the printer prints text about the particular drug being prescribed, and in the second portion, which includes a label laminate divided into a first section and a second section by a generally horizontal, second tear line. The second section is further divided into a plurality of horizontal strips by at least two generally horizontal tear lines which extend from the first tear line to one of the side edges of the blank. The laminate is comprised of a backing sheet, a removable label sheet having a front side that can be printed on with the printer and a. back side, and a pressure-type adhesive on the back side of said label sheet.

Other advantages, features, and details of the present invention will be set forth in or apparent from the detailed description thereof contained hereinbelow.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is an electronic block diagram of a prototype computer system used to demonstrate the present invention;

FIG. **2** is a plan view of a blank in accordance with the present invention before it has been printed on;

FIG. **3** is an enlarged, not-to-scale, cross-sectional view taken along lines **3—3** of FIG. **2** in which certain layers have been shown thicker in order to depict the details of construction;

FIG. **4** is a plan view of a blank that has indicia printed on it by a computer driven laser printer;

FIGS. **5**, **6** and **8** are plan views of other blanks in accordance with the present invention; and

FIG. **7** is an enlarged, not-to-scale, cross-sectional view taken along lines **7—7** of FIG. **6** in which certain layers have been shown thicker in order to depict the details of construction.

## DESCRIPTION OF THE PREFERRED EMBODIMENT

With reference now to the drawings in which like numerals are used to represent like elements throughout the several

5,855,395

3

views, and in particular with reference to FIG. 1, a computer system 10 is depicted for generating a completed form such as shown in FIG. 4. Computer system 10 is comprised of a conventional host computer 12 having a conventional keyboard 14 for the manual input of information, a conventional computer monitor 16 for the output of information and a conventional external memory 18, which can be a conventional hard disk system. Host computer 12 has an input/output port 20 and can be an IBM compatible computer type using an INTEL brand 80486 DX microprocessor with 8 Mega-bytes of internal memory. Memory 18 holds a number of data bases, such as a customer data base containing customer information and a store data base containing the pharmacy's inventory control information. Memory 18 also holds a conventional pharmaceutical computer program. The program is used by pharmacies to generate the customer data base and store data base, and to extract information contained in these data bases and combine it with information entered from keyboard 14 by a pharmacist to produce an output to drive a printer to print a conventional drug label.

Connected to host computer through input/output port 20 is a supplemental computer 22. Supplemental computer 22 can be identical in configuration to host computer 12. Connected to supplemental computer 22 is a conventional external memory 24 and a conventional laser printer 26, such as a Hewlett-Packard model Series 2 laser printer. Stored in memory 24 are an NDC (National Drug Code) data base containing a standardized drug code list, a data base containing information for the customer about each prescribed drug, such as the commercially available C-PAL® data base, and a data base of warning labels, including unique logos and icons (see, for example, FIG. 4). Also contained in memory 24 is a program which permits supplemental computer to intercept the printer information from host computer 12, to reformat the information, to enter the C-PAL® and warning label data bases to get the related information, and to regenerate the printer information with the incorporated C-PAL® and warning label information.

Computer system 10 is depicted in FIG. 1 as having two computers and it is so configured because it has been designed to complement, upgrade and modify an existing pharmacy computer system that has been using commercially available software. However, an alternative embodiment of the invention (not depicted) is implemented on, or includes, a single computer system in which supplemental computer 22 is combined with host computer 12, supplemental computer memory 24 is combined with host computer memory 18, and a single computer program is used both for the conventional pharmacy inventory control, accounting and report generating tasks and for the printing of a completed form, such as depicted in FIG. 4.

A blank or form 50 in accordance with the present invention is depicted in FIGS. 2 and 3. Blank 50 is preferably made from a flexible, conventional stock material. Blank 50 has a front side 52 which can receive and retain "ink" or print from printer 26 and a back side 54 (FIG. 3). As shown in FIG. 2, blank 50 has a top edge 56 and a bottom edge 58 parallel thereto which are arbitrarily used to define the horizontal direction in blank 50. Blank 50 also has a left side 60 and a right side 62 parallel thereto which are arbitrarily used to define the vertical direction in blank 50. In a presently preferred embodiment, blank 50 is made of paper and is essentially a square with each side having a length of 8.5 inches (21.59 cm). Alternatively, blank 50 can be made from a plastic or other thin sheet material which can be printed on.

Blank 50 is comprised of a first sheet 64 and a second sheet 66 which have respective overlapping strips 68 and 70

4

that are adhered to one another with a conventional heat set adhesive 72, as shown in FIG. 3.

Strip 68 is defined not only by its overlapping strip 70, but also by a vertically extending tear line 74 that extends from top edge 56 to bottom edge 58. Tear line 74 can be a score line, but preferably is a perforation line with the perforations extending completely through first sheet 64. Thus, as seen on front side 52 of blank 50, it can also be said that tear line 74 divides blank 50 into a first portion 76, which is coextensive with first sheet 64 less strip 68, and a second portion 78 which is coextensive with second sheet 66 including strip 70.

As depicted in FIG. 3, second sheet 66 is comprised of a laminate and has a backing 80 and a paper top layer 82. Backing 80 in the presently preferred embodiment is a paper product having an embedded plastic top portion or coated with a plastic film (not shown). Attached to the underside of top layer 82 is a conventional pressure adhesive 84. By appropriately selecting top layer 82, adhesive 84 and backing 80, adhesive 84 removably adheres top layer 82 to backing 80, and after top layer 82 is removed from said backing sheet is able to adhere more permanently top layer 82 to a container (not shown), which can be a conventional plastic bottle in which drugs are dispensed.

As seen in FIG. 2, when viewed together with FIG. 4, first portion 76 is much larger in the horizontal direction than second portion 78. In a presently preferred embodiment, first sheet has a width of 6 ⅝th inches (16.83 cm) and first portion 76 has a width of 6 ⅜ inches (16.19 cm). First portion 76 is divided into three sections, 86, 88 and 90 by a vertical tear line 92 and by a short horizontal tear line 94. Tear line 94 is a perpendicular bisector of tear line 92, which is parallel to tear line 74 and similarly extends from top edge 56 to bottom edge 58. In a preferred embodiment of the invention, tear lines 92 and 94 are perforation lines with the perforation extending completely through first sheet 64. As shown in FIG. 4, section 86 is the largest section and is used to contain the text of a Patient Advisory Leaflet. Sections 88 and 90 are obviously of equal size and they are each used to contain the text of a customer receipt which can be used for financial records.

Second portion 78 is divided into a plurality of vertically arranged portions by a plurality of horizontal tear lines. In the present embodiment there are seven such portions denoted 96, 98, 100, 102, 104, 106 and 108 created by six tear lines 110, 112, 114, 116, 118, and 120. In a preferred embodiment, tear lines 110, 112, 114, 116 and 120 extend only through top layer 82 and attached layer of adhesive 84 and are perforation lines. On the other hand, tear line 118 in a preferred embodiment is a perforation line with the perforations extending completely through second sheet 66. Portion 96 is a wrap-around label to be applied to a drug container. Portions 98, 100, 102 and 104 are four blanks, none, some or all of which may be used to contain design and word indicia representing warning labels to be applied to a drug container. Portion 106 is unused filler.

Portion 108 is vertically bisected by a vertical tear line 122 to create vertically extending parts 124 and 126. In a preferred embodiment, tear line 122 is a perforation line with the perforations extending completely through second sheet 66. Part 124 is used to obtain a third party signature and also to contain information about the particular prescription. Part 126 can be used as an adhesive pharmacy record label to be applied to an appropriate ledger page (not shown).

The advantages to having tear lines 74, 92, 94, 118 and 122 extend completely through their respective sheets 64

5,855,395

| 5 | 6 |

and 66 is that blank 50 can be easily and quickly divided into five portions, each with an entirely different purpose. Portions 86 (the patient advisory leaflet), 88 and 90 are adhesive free and are given to the customer. Combined portions 96, 98, 100, 102 104 contain indicia having the information necessary for the container of the drug being dispensed, and the adhesive top layer 82 can be removed as one piece from backing 80, the unused warning label portions removed, and the remaining piece applied to the drug container. Finally, adhesive parts 124 and 126 can be selectively removed from their piece of backing 80 and applied to the appropriate pharmacy ledger.

The number of warning label blanks provided is somewhat arbitrary, except that based upon prior experience most druggist do not select more than four such labels for any particular drug. Obviously, the number of blanks could be larger or smaller if necessary, and the unused blanks would be separated and discarded before the drug label, portion 96, and used warning labels, portions 98, 100, 102 and 104 are applied.

In an alternative embodiment, portion 108 could be divided into three vertically extending parts by two tear lines so that the signature section could be separated from the pharmacy record label.

The further embodiments depicted in FIGS. 5–8 may be used alone as illustrated or as alternative portions of the particular embodiment described above.

The FIG. 5 embodiment comprises a main label 200 and auxiliary labels 210 to 213. Auxiliary labels 210 to 213, which are horizontally disposed with respect to main label 200, are horizontally separated from each other and from other portions of the blank by way of knife or die cuts 220 to 224 and vertically from other portions of the blank by way of knife or die cuts 230 to 233, which knife or die cuts extend through the adhesive layer but not through the backing layer. At least one of lines 240 to 243 is a perforation line extending to but not through the backing sheet, such that at least one of auxiliary labels 210 to 213 is separated from the backing sheet simultaneously with the removal of main label 200 from the backing sheet. Any of lines 240 to 243 which are not perforation lines, if any, are knife or die cuts extending to the backing sheet, such that the respective auxiliary labels are completely separated from each other as well as from any other portions of the blank.

The embodiment of FIGS. 6 and 7 differs from the FIG. 5 embodiment in that auxiliary labels 310 to 313 are vertically rather than horizontally disposed with respect to the main label 300. Thus each of lines 320 to 328 is a knife or die cut extending through adhesive 84 to but not through backing sheet 80, at least line 330 of lines 330 to 333 is a perforation line extending to but not through back sheet 80, and any of lines 331 to 333 which are not perforation lines, if any, are knife or die cuts extending to but not through the backing sheet, such that any respective auxiliary label is completely separated, and therefore separately removable, from any other portion of the blank. With such a construction, at least one but optionally up to all of the auxiliary labels may be removed from the backing sheet simultaneously with the main label and any unused but removed auxiliary labels, if any, may be subsequently and easily separated from the main and/or used auxiliary label(s). In a preferred embodiment of the FIGS. 6 and 7 embodiment, lines 330 and 331 are perforated lines and lines 332 and 333 are die cuts, such that two auxiliary labels 310 and 311 are simultaneously removed from back sheet 80 with main label 302.

The embodiment of FIG. 8 illustrates a blank 400 of which the blank of the FIG. 6 embodiment is one component 410. Additional components 415 and 420 of the FIG. 8 embodiment are additional separately removable adhesive labels.

As described in detail above, in carrying out a method of labeling utilizing blank forms according to the invention, the user causes the desired information to be printed on the main label and, optionally, on one or more auxiliary labels, simultaneously removes the printed main label and at least one auxiliary label from the backing sheet, separates any simultaneously removed but unused auxiliary label(s), and simultaneously applies the main label and any remaining, i.e., used, auxiliary label(s) to another surface. When used in a pharmacy application as a labeling system for prescription drugs, any used auxiliary labels comprise warning labels to the user of the drug dispensed in the container to which the labels are affixed.

Thus, the present invention has been described with reference to the drawings with respect to presently preferred embodiments. As such, the present invention permits, for example, the existing computer system of a pharmacy to execute a label set as usual while the software of the present invention adds information by which laser printer 26 will print any warning labels and an advisory leaflet corresponding to the drug being dispensed. The one piece wrap-around pressure sensitive label for the drug container optionally combines the main drug container label with one or more selected warning labels.

Other modifications and enhancements of the present invention would be obvious to those skilled in the art.

We claim:

1. A pharmacy form for use with a printer for printing drug-related information and labels, said blank comprising:

a sheet having a front side that can be printed on with the printer and having a back side, said sheet having a top edge and a bottom edge which together define a generally horizontal direction, and having two side edges which together define a generally vertical direction;

said sheet comprising a first portion and a second portion divided by a first, generally vertically extending tear line that extends from said top edge to said bottom edge;

said first portion comprising plain paper for receiving printed text,

said second portion comprising

a backing sheet;

a removable label sheet having a front side that can be printed on with the printer and a back side;

a pressure-type adhesive on said back side of said label sheet, said adhesive removable adhering said label sheet to said backing sheet and after said label sheet is removed from said backing sheet being able to adhere said label sheet to another surface;

said removable label sheet comprising a main label and a plurality of elongated auxiliary labels smaller than said main label with the direction of elongation of the auxiliary labels extending lateral to the first tear line, and means permitting said auxiliary labels to be simultaneously removable from said backing sheet with said main label and subsequently readily separable from said main label; and

at least one further label in addition to said main label and said auxiliary labels, said further label being substantially completely separated from all other portions of said label sheet by die cuts substantially

5,855,395

**7**

surrounding said further label and extending through said label sheet and said adhesive to said backing sheet.

2. A printed pharmacy form containing printed drug information and printed main and warning labels for a drug container, said form comprising:

a sheet having a front side a back side, said sheet having a top edge and a bottom edge which together define a generally horizontal direction, and having two side edges which together define a generally vertical direction;

said sheet comprising a first portion and a second portion divided by a first, generally vertically extending tear line that extends from said top edge to said bottom edge;

said first portion comprising plain paper having text printed thereon about a particular drug being prescribed,

said second portion comprising

a backing sheet attached to and extending away from an edge of said first portion in a plane generally parallel to the plane of the first portion;

a removable label sheet having a front side printed on with the printer and a back side; and

a pressure-type adhesive on said back side of said label sheet, said adhesive removably adhering said label sheet to said backing sheet so that after said label sheet is removed from said backing sheet a pharmacy worker is able to adhere said label sheet to a drug container;

said second portion divided into a first section and a second section by a generally horizontal, second tear line, said first section comprising a printed main label for a drug container and a plurality of elongated auxiliary label strips with the direction of elongation lateral to the first tear line, at least one of the elongated auxiliary label strips having drug warning text printed thereon, and means permitting the elongated auxiliary label strips to be simultaneously remove from said backing sheet with said main drug container label and subsequently readily separated from said main label.

3. A form according to claim 2, wherein said means comprises a perforated-line tear line extending through said label sheet and said adhesive to said backing sheet and separating said main drug container label and at least a first drug warning label.

4. A form according to claim 3, comprising four drug warning labels.

5. A form according to claim 4 wherein said means permit more than one of said drug warning labels to be simultaneously removable with and subsequently readily separable from said main drug container label, and said means are perforated-line tear lines between said main drug container label and a first drug warning label and between said first warning label and a second warning label, said perforated-line tear lines extending through said label sheet and said adhesive to said backing sheet.

6. A form according to claim 2, wherein at least one drug warning label not simultaneously removable with said main drug container label is substantially completely separated from all other portions of said label sheet by die cuts substantially surrounding said drug warning label and extending through said label sheet and said adhesive to said backing sheet.

7. A form according to claim 2 in which said label laminate further comprises at least one further label in

**8**

addition to said main drug container label and said drug warning labels, said further label being substantially completely separated from all other portions of said label sheet by die cuts substantially surrounding said further label and extending through said label sheet and said adhesive to said backing sheet.

8. A method of labeling a drug container comprising the steps of causing desired drug information to be printed on a blank having a main label with printing thereon alone a first direction and plural smaller auxiliary labels removably attached to the main label and with printing on at least one of the auxiliary labels along a second direction generally lateral to the first direction, said labels being releasably adhered to a backing sheet; carrying out the printing in the first and second directions during one pass through a printer; simultaneously removing said main label and at least one auxiliary label from said backing sheet; and separating any simultaneously removed but unused auxiliary labels without printing from said main label and any used auxiliary labels, then simultaneously affixing said main label and any used auxiliary labels with printing to a surface of a drug container.

9. A method according to claim 8, wherein said blank comprises a plurality of said smaller auxiliary labels and less than all of said auxiliary labels are simultaneously removed from said backing sheet with said main label.

10. A method of labeling a container for a drug dispensed by a pharmacist, comprising the steps of causing desired prescription-specific information to be printed in a first direction on a main label of a blank comprising said main label and plural smaller auxiliary labels removably attached with the main label said main and auxiliary labels being releasably adhered to a backing sheet; printing any warning label applicable to said drug on said auxiliary labels in a second direction lateral to the first direction; carrying out the printing in the first and second directions during one pass through a printer; simultaneously removing from said backing sheet said printed main label and at least one of the auxiliary labels; separating from said removed portion any simultaneously removed but unused auxiliary labels; and simultaneously affixing said main label and any printed warning label to said container.

11. A method according to claim 10, wherein less than all of said auxiliary labels are simultaneously removed from said backing sheetwith said main label.

12. A method for use by a pharmacist in labeling a container for a prescription drug to be dispensed to a customer comprising the steps of:

providing a blank form having a drug container label and warning labels releasably adhered to a backing sheet, each of the labels being provided with a surface upon which may be printed information relating to the prescription drug;

connecting the drug container and warning labels such that the removal of one of the labels from the backing sheet will simultaneously remove from the backing sheet the other label to which it is connected and with the two removed labels separable from each other prior to affixing any of the labels to the container;

attaching an edge of the backing sheet to an edge of a sheet of plain paper having a printing surface;

then printing in a single pass through a printer drug-related information on the printing surface of the plain paper sheet, drug-related information in a first direction on the drug container label and warning label information in a second direction lateral to the first direction onto at least one of the warning labels;

simultaneously removing the drug container and at least the ones of the warning labels with printing thereon from the backing sheet; and

5,855,395

9

affixing the drug container label and the ones of the warning labels having printing thereon to the prescription drug container.

**13**. A method of forming a composite label for a container useful in dispensing drugs by a pharmacist in which the composite label includes both a main label portion with specific drug or patient information and at least one warning label portion containing warning information, and in which the main and warning label portions may be rapidly and efficiently printed and affixed to the container, the method comprising the steps of:

   providing a blank form having the main label portion and plural warning label portions releasably adhered to a backing sheet, both the main label portion and the warning label portions having respective outer surfaces for receiving printed information thereon;

   connecting the main label portion and the warning label portions such that the removal of the main label portion permits the simultaneous removal of the warning label portions together therewith;

   printing drug or patient specific information onto the outer surface of the main label portion in a first direction;

   printing warning information onto the outer surface of at least one of the warning label portions in a second direction which is generally lateral to the first printing direction on the main label portion;

   after completing the printing steps, removing from the backing sheet a composite label including the printed main label portion and any of the warning label portions containing printing thereon;

   separating from the composite label any remaining warning label portions without printing, if any; and then

   affixing the composite label to the drug container.

**14**. The method of forming a label as recited in claim **13**, further comprising the step of carrying out the printing of the main label portion and the printing of the main label portion and the printing of the warning label portions during one printing pass.

**15**. The method recited in claim **13** further comprising the steps of:

   removably affixing a patient advisory form alongside the main label portion; and

   printing patient advisory information onto an outer surface of the patient advisory form in either the first or second printing directions.

**16**. The method recited in claim **15** further comprising the step of printing the main label portion, the warning label portions and the advisory patient form during one printing pass.

**17**. A method of forming a composite label for a container useful in dispensing drugs by a pharmacist in which the composite label includes both a main label portion with specific drug or patient information and at least one warning label portion containing warning information, and in which the main and warning label portions may be rapidly and efficiently printed and affixed to the container, the method comprising the steps of:

   providing a blank form having the main label portion and plural warning label portions releasably adhered to a backing sheet, both the main label portion and the warning label portions having respective outer surfaces for receiving printed information thereon;

   printing drug or patient specific information onto the outer surface of the main label portion in a first direction; and

   printing warning information onto the outer surface of at least one of the warning label portions in a second

10

direction which is generally lateral to the first printing direction on the main label portion.

**18**. The method recited in claim **17** further comprising the steps of:

   removably affixing a patient advisory form alongside the main label portion; and

   printing patient advisory information onto an outer surface of the patient advisory form in either the first or second printing directions.

**19**. The method recited in claim **18** further comprising the step of printing the main label portion, the warning label portions and the advisory patient form during one printing pass.

**20**. A method of forming a composite label for a container useful in dispensing drugs by a pharmacist in which the composite label includes both a main label portion with specific drug or patient information and at least one warning label portion containing warning information, and in which the main and warning label portions may be rapidly and efficiently printed and affixed to the container, the method comprising the steps of:

   providing a blank form having the main label portion and plural warning label portions releasably adhered to a backing sheet, both the main label portion and the warning label portions having respective outer surfaces for receiving printed information thereon;

   connecting the main label portion and the warning label portions such that the removal of the main label portion permits the simultaneous removal of the warning label portions together therewith;

   printing drug or patient specific information onto the outer surface of the main label portion;

   printing warning information onto the outer surface of at least one of the warning label portions;

   after completing the printing steps, removing from the backing sheet a composite label including the printed main label portion and any of the warning label portions containing printing thereon;

   separating from the composite label any remaining warning label portions without printing, if any; and then affixing the composite label to the drug container.

**21**. A method for forming a label for a container useful in dispensing prescription drugs and in which both patient/drug specific information and warning information may be printed and then rapidly affixed to the container, the method comprising the steps of:

   providing a blank form having a main label and a plurality of elongated warning label strips releasably adhered to a backing sheet, both the main label and the elongated warning label strips having respective outer surfaces for receiving printed information thereon;

   connecting the main label and the plurality of elongated warning label strips such that at least one of the warning label strips is alongside the main label, the main label and the plurality of elongated warning strips being connected together so that the removal of the main label permits the simultaneous removal of the elongated warning label strips;

   printing drug/patient specific information onto the outer surface of the main label;

   printing warning information onto an outer surface of at least one of the plurality of elongated warning label strips;

   after completing the printing steps, removing from the backing sheet the printed main label and at least the

5,855,395

**11**

ones of the plurality of elongated warning label strips containing printing thereon;

separating from the printed main label and any printed warning label strips any remaining warning label strips without printing thereon, if any; and then

affixing to the drug container the printed main label and any of the elongated printed warning label strips attached thereto.

**22**. The method recited in claim **21** further comprising the step of positioning the warning label strips so that the

**12**

direction of elongation is parallel to the side of the main label to which the warning label strips are adjacent.

**23**. The method recited in claim **22** further comprising the step of printing warning label information onto the outer surface of at least one of the plurality of elongated warning label strips in a direction which is generally lateral to the direction of printing on the main label.

\* \* \* \* \*

# United States Patent [19]

**Foote et al.**

[11] **Patent Number:** 6,036,231

[45] **Date of Patent:** *Mar. 14, 2000

[54] **PHARMACY LABEL AND RECORD SYSTEM AND METHOD**

[75] Inventors: **Richard W. Foote**, New Smyrna Beach; **Richard Young**, Bradenton, both of Fla.

[73] Assignee: **Automatic Business Products Company, Inc.**, New Smyrna Beach, Fla.

[ * ] Notice: This patent is subject to a terminal disclaimer.

[21] Appl. No.: **09/224,329**

[22] Filed: **Dec. 31, 1998**

## Related U.S. Application Data

[63] Continuation of application No. 08/867,965, Jun. 3, 1997, Pat. No. 5,855,395, which is a continuation of application No. 08/504,765, Jul. 20, 1995, Pat. No. 5,642,906.

[51] Int. Cl.[7] ............................................. **B42D 15/00**
[52] U.S. Cl. .............................. **283/67**; 40/299; 40/310; 40/638; 206/570; 281/2; 281/5; 283/81; 283/900; 428/42.1; 428/43
[58] **Field of Search** ................................. 283/81, 67, 70, 283/74, 79, 101, 105, 900; 428/42.1, 43; 40/310, 306, 638, 299; 281/2, 5; 206/570

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| Re. 30,958 | 6/1982 | White . |
| 3,484,976 | 12/1969 | Shea . |
| 3,625,547 | 12/1971 | Burke . |
| 3,869,333 | 3/1975 | McMaster . |
| 3,993,814 | 11/1976 | Cavender . |
| 4,156,539 | 5/1979 | Davidson et al. . |
| 4,159,129 | 6/1979 | Lockhart . |
| 4,189,053 | 2/1980 | Stagnito et al. . |
| 4,277,089 | 7/1981 | Lockhart . |
| 4,312,523 | 1/1982 | Haines . |
| 4,637,635 | 1/1987 | Levine . |
| 4,799,712 | 1/1989 | Biava et al. . |
| 4,875,174 | 10/1989 | Olodort et al. . |

| | | |
|---|---|---|
| 4,876,131 | 10/1989 | Ashby et al. . |
| 4,918,694 | 4/1990 | Baum . |
| 4,972,657 | 11/1990 | McKee . |
| 5,031,939 | 7/1991 | Webendorfer et al. . |
| 5,046,609 | 9/1991 | Mangini et al. . |
| 5,048,870 | 9/1991 | Mangini et al. . |
| 5,129,682 | 7/1992 | Ashby . |
| 5,147,699 | 9/1992 | Browning et al. . |
| 5,178,419 | 1/1993 | Bolnick et al. . |
| 5,182,152 | 1/1993 | Ericson . |
| 5,271,642 | 12/1993 | Jahier et al. . |
| 5,328,208 | 7/1994 | Garrison . |
| 5,413,383 | 5/1995 | Laurash et al. . |
| 5,435,600 | 7/1995 | Griffiths et al. . |
| 5,642,906 | 7/1997 | Foote et al. ...................... 281/2 |
| 5,855,395 | 1/1999 | Foote et al. ...................... 283/67 |

## OTHER PUBLICATIONS

CVS Pharmacy Label and Bill of Lading, Apr. 1987.
Veterans Administration Medical Center Form (date unknown, alleged to be "1986").
Drug Package Prescription Label Brochure (date unknown, alleged to be "as early as 1990").
Specimen of Bushell Professional Pharmacy Label (date unknown).

*Primary Examiner*—Andrea L. Pitts
*Assistant Examiner*—Monica Smith
*Attorney, Agent, or Firm*—Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.

[57] **ABSTRACT**

A printer blank for a computer system printer is disclosed. The blank has a contiguous pressure adhesive backed label section and may also have a larger plain paper section separated from the label section by a perforation line. The label section is comprised of a plurality of adhesive backed labels and a backing sheet, including a main label portion and at least one smaller auxiliary label. A preferred blank comprises a plurality of auxiliary labels. In use, at least one, but preferably not all, of the auxiliary labels on such a preferred blank are simultaneously removed from the backing sheet with the main label portion. Any auxiliary label(s) simultaneously removed with the main label but not printed upon are readily separated from the main label.

**16 Claims, 4 Drawing Sheets**



08CV1726
JUDGE MORAN        YM
MAGISTRATE JUDGE COLE

**U.S. Patent**    Mar. 14, 2000    Sheet 1 of 4    **6,036,231**



FIG. 1

50

64
52

56

66
82

70

88

96

92

110

98    112
100   114
102   116
104   118

86

94

74    120
106

76

78    108

90

122

124   126

3    3

60

58

70

62

*FIG. 2*



52

82    122

70    66

84

72    80

64    74    68    54

*FIG. 3*

*FIG.4*



6,036,231

# 1

## PHARMACY LABEL AND RECORD SYSTEM AND METHOD

This is a continuation of application Ser. No. 08/867,965 filed Jun. 3, 1997 which will issue as U.S. Pat. No. 5,855,395 on Jan. 5, 1999 which is a continuation of Ser. No. 08/504, 765 filed Jul. 20, 1995 now U.S. Pat. No. 5,642,906.

### FIELD OF THE INVENTION

This invention relates to paper blanks for use with a printer in a computer system, and in particular relates to a compound paper blank to be printed on by a computer printer.

### BACKGROUND OF THE INVENTION

Labels having pressure sensitive adhesive have been applied to drug containers for a long time by the pharmaceutical industry to identify the customer, the doctor, the drug being dispensed, and the frequency of the dosage. These labels usually can be purchased in bundles that can be fed into a computer driven printer. The information to be printed on one of the labels is either typed into the computer using a conventional pharmacy computer program or is retrieved from a stored record having been previously typed into the computer memory using the pharmacy computer program. Such a computer program also has automatically printed out receipts for the customer and records for the pharmacy.

The pharmaceutical industry has also been applying oblong or rectangular warning labels to the drug containers for some time. These warning labels warn the customer about certain events or provide instructions involving the prescribed drug. For example, a warning label may carry the message:

MAY CAUSE DROWSINESS; ALCOHOL MAY INTENSIFY THIS EFFECT. USE CARE WHEN OPERATING A CAR OR DANGEROUS MACHINERY.

The warning labels have been supplied to the pharmaceutical industry for some time in rolls of the same message.

Pharmacies have also been supplying customers with an instruction sheet containing information about the drugs they are purchasing. One type of such labels carry the brand name PAL (Patient Advisory Leaflet).

The prior art also contains references which teach the use of a computer system to generate prescription labels printed by a computer driven printer Such references include the following U.S. patents, which are incorporated herein by reference: Baum U.S. Pat. No. 4,918,604; Olodort et al. U.S. Pat. No. 4,875,174; and McKee U.S. Pat. No. 4,972,657. The prior art also contains references which disclose a manual form having an adhesive label portion used in combination for record keeping and generating a label to be applied to a drug container. Examples of U.S. patents, which are incorporated herein by reference, disclosing such forms are the Lockhart U.S. Pat. Nos. 4,277,089 and 4,159,129; and the Biava et al. U.S. Pat. No. 4,799,712.

However, there is no known prior art reference which provides a blank for a computer printer that contains portions for both a removable prescription drug label and a removable warning label with portions for other printed information. Such a system would reduce package costs, provide greater flexibility, and be compatible with existing computer software used by pharmacies.

### SUMMARY OF THE INVENTION

Accordingly the present invention is designed to provide a multi-part blank which can be fed in a computer driven

# 2

printer and when printed, will contain all of the parts needed for a complete set. Such a set contains a peelable vial label having a pressure sensitive adhesive connected to removable strips of computer selected warning labels also having a pressure sensitive adhesive. The set also contains portions for printed information needed by both the pharmacy and the customer.

The present invention provides a printer blank which can cut expenses, reduce errors, and cut time in preparing records and drug containers for customers. In one particular embodiment of the invention, a single sheet of multisectional paper blank can be fed into a laser printer and on that one sheet there will be printed a drug advisory leaflet; no, one or more than one warning labels having a pressure sensitive adhesive on its back side for easy application to a drug container, and a drug container label containing drug, customer, and pharmacy information. This blank in one pass through the laser printer contains all of the necessary records and parts for the entire drug transaction.

According to one embodiment, the present invention comprises a blank for use with a printer for printing information and labels for drug containers. The blank comprises a sheet of a material having a front side that can be printed on with the printer, a back side, a top and bottom edge which together define a generally horizontal direction, and two side edges which together define a generally vertical direction. The sheet includes at least a first portion and a second portion divided by a first, generally vertically extending tear line or tear line that extends from the top edge to the bottom edge. In the first portion the printer prints text about the particular drug being prescribed, and in the second portion, which includes a label laminate divided into a first section and a second section by a generally horizontal, second tear line. The second section is further divided into a plurality of horizontal strips by at least two generally horizontal tear lines which extend from the first tear line to one of the side edges of the blank. The laminate is comprised of a backing sheet, a removable label sheet having a front side that can be printed on with the printer and a back side, and a pressure-type adhesive on the back side of said label sheet.

Other advantages, features, and details of the present invention will be set forth in or apparent from the detailed description thereof contained hereinbelow.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is an electronic block diagram of a prototype computer system used to demonstrate the present invention;

FIG. **2** is a plan view of a blank in accordance with the present invention before it has been printed on;

FIG. **3** is an enlarged, not-to-scale, cross-sectional view taken along lines **3—3** of FIG. **2** in which certain layers have been shown thicker in order to depict the details of construction;

FIG. **4** is a plan view of a blank that has indicia printed on it by a computer driven laser printer;

FIGS. **5, 6** and **8** are plan views of other blanks in accordance with the present invention; and

FIG. **7** is an enlarged, not-to-scale, cross-sectional view taken along lines **7—7** of FIG. **6** in which certain layers have been shown thicker in order to depict the details of construction.

### DESCRIPTION OF THE PREFERRED EMBODIMENT

With reference now to the drawings in which like numerals are used to represent like elements throughout the several

6,036,231

3

views, and in particular with reference to FIG. 1, a computer system 10 is depicted for generating a completed form such as shown in FIG. 4. Computer system 10 is comprised of a conventional host computer 12 having a conventional keyboard 14 for the manual input of information, a conventional computer monitor 16 for the output of information and a conventional external memory 18, which can be a conventional hard disk system. Host computer 12 has an input/output port 20 and can be an IBM compatible computer type using an INTEL brand 80486 DX microprocessor with 8 Mega-bytes of internal memory. Memory 18 holds a number of data bases, such as a customer data base containing customer information and a store data base containing the pharmacy's inventory control information. Memory 18 also holds a conventional pharmaceutical computer program. The program is used by pharmacies to generate the customer data base and store data base, and to extract information contained in these data bases and combine it with information entered from keyboard 14 by a pharmacist to produce an output to drive a printer to print a conventional drug label.

Connected to host computer through input/output port 20 is a supplemental computer 22. Supplemental computer 22 can be identical in configuration to host computer 12. Connected to supplemental computer 22 is a conventional external memory 24 and a conventional laser printer 26, such as a Hewlett-Packard model Series 2 laser printer. Stored in memory 24 are an NDC (National Drug Code) data base containing a standardized drug code list, a data base containing information for the customer about each prescribed drug, such as the commercially available C-PAL® data base, and a data base of warning labels, including unique logos and icons (see, for example, FIG. 4). Also contained in memory 24 is a program which permits supplemental computer to intercept the printer information from host computer 12, to reformat the information, to enter the C-PAL® and warning label data bases to get the related information, and to regenerate the printer information with the incorporated C-PAL® and warning label information.

Computer system 10 is depicted in FIG. 1 as having two computers and it is so configured because it has been designed to complement, upgrade and modify an existing pharmacy computer system that has been using commercially available software. However, an alternative embodiment of the invention (not depicted) is implemented on, or includes, a single computer system in which supplemental computer 22 is combined with host computer 12, supplemental computer memory 24 is combined with host computer memory 18, and a single computer program is used both for the conventional pharmacy inventory control, accounting and report generating tasks and for the printing of a completed form, such as depicted in FIG. 4.

A blank or form 50 in accordance with the present invention is depicted in FIGS. 2 and 3. Blank 50 is preferably made from a flexible, conventional stock material. Blank 50 has a front side 52 which can receive and retain "ink" or print from printer 26 and a back side 54 (FIG. 3). As shown in FIG. 2, blank 50 has a top edge 56 and a bottom edge 58 parallel thereto which are arbitrarily used to define the horizontal direction in blank 50. Blank 50 also has a left side 60 and a right side 62 parallel thereto which are arbitrarily used to define the vertical direction in blank 50. In a presently preferred embodiment, blank 50 is made of paper and is essentially a square with each side having a length of 8.5 inches (21.59 cm). Alternatively, blank 50 can be made from a plastic or other thin sheet material which can be printed on.

Blank 50 is comprised of a first sheet 64 and a second sheet 66 which have respective overlapping strips 68 and 70

4

that are adhered to one another with a conventional heat set adhesive 72, as shown in FIG. 3.

Strip 68 is defined not only by its overlapping strip 70, but also by a vertically extending tear line 74 that extends from top edge 56 to bottom edge 58. Tear line 74 can be a score line, but preferably is a perforation line with the perforations extending completely through first sheet 64. Thus, as seen on front side 52 of blank 50, it can also be said that tear line 74 divides blank 50 into a first portion 76, which is coextensive with first sheet 64 less strip 68, and a second portion 78 which is coextensive with second sheet 66 including strip 70.

As depicted in FIG. 3, second sheet 66 is comprised of a laminate and has a backing 80 and a paper top layer 82. Backing 80 in the presently preferred embodiment is a paper product having an embedded plastic top portion or coated with a plastic film (not shown). Attached to the underside of top layer 82 is a conventional pressure adhesive 84. By appropriately selecting top layer 82, adhesive 84 and backing 80, adhesive 84 removably adheres top layer 82 to backing 80, and after top layer 82 is removed from said backing sheet is able to adhere more permanently top layer 82 to a container (not shown), which can be a conventional plastic bottle in which drugs are dispensed.

As seen in FIG. 2, when viewed together with FIG. 4, first portion 76 is much larger in the horizontal direction than second portion 78. In a presently preferred embodiment, first sheet has a width of 6⅝th inches (16.83 cm) and first portion 76 has a width of 6⅜ inches (16.19 cm). First portion 76 is divided into three sections, 86, 88 and 90 by a vertical tear line 92 and by a short horizontal tear line 94. Tear line 92 is a perpendicular bisector of tear line 92, which is parallel to tear line 74 and similarly extends from top edge 56 to bottom edge 58. In a preferred embodiment of the invention, tear lines 92 and 94 are perforation lines with the perforation extending completely through first sheet 64. As shown in FIG. 4, section 86 is the largest section and is used to contain the text of a Patient Advisory Leaflet. Sections 88 and 90 are obviously of equal size and they are each used to contain the text of a customer receipt which can be used for financial records.

Second portion 78 is divided into a plurality of vertically arranged portions by a plurality of horizontal tear lines. In the present embodiment there are seven such portions denoted 96, 98, 100, 102, 104, 106 and 108 created by six tear lines 110, 112, 114, 116, 118, and 120. In a preferred embodiment, tear lines 110, 112, 114, 116 and 120 extend only through top layer 82 and attached layer of adhesive 84 and are perforation lines. On the other hand, tear line 118 in a preferred embodiment is a perforation line with the perforations extending completely through second sheet 66. Portion 96 is a wrap-around label to be applied to a drug container. Portions 98, 100, 102 and 104 are four blanks, none, some or all of which may be used to contain design and word indicia representing warning labels to be applied to a drug container. Portion 106 is unused filler.

Portion 108 is vertically bisected by a vertical tear line 122 to create vertically extending parts 124 and 126. In a preferred embodiment, tear line 122 is a perforation line with the perforations extending completely through second sheet 66. Part 124 is used to obtain a third party signature and also to contain information about the particular prescription. Part 126 can be used as an adhesive pharmacy record label to be applied to an appropriate ledger page (not shown).

The advantages to having tear lines 74, 92, 94, 118 and 122 extend completely through their respective sheets 64

5

and **66** is that blank **50** can be easily and quickly divided into five portions, each with an entirely different purpose. Portions **86** (the patient advisory leaflet), **88** and **90** are adhesive free and are given to the customer. Combined portions **96**, **98**, **100**, **102** **104** contain indicia having the information necessary for the container of the drug being dispensed, and the adhesive top layer **82** can be removed as one piece from backing **80**, the unused warning label portions removed, and the remaining piece applied to the drug container. Finally, adhesive parts **124** and **126** can be selectively removed from their piece of backing **80** and applied to the appropriate pharmacy ledger.

The number of warning label blanks provided is somewhat arbitrary, except that based upon prior experience most druggist do not select more than four such labels for any particular drug. Obviously, the number of blanks could be larger or smaller if necessary, and the unused blanks would be separated and discarded before the drug label, portion **98**, and used warning labels, portions **98**, **100**, **102** and **104** are applied.

In an alternative embodiment, portion **108** could be divided into three vertically extending parts by two tear lines so that the signature section could be separated from the pharmacy record label.

The further embodiments depicted in FIGS. **5–8** may be used alone as illustrated or as alternative portions of the particular embodiment described above.

The FIG. 5 embodiment comprises a main label **200** and auxiliary labels **210** to **213**. Auxiliary labels **210** to **213**, which are horizontally disposed with respect to main label **200**, are horizontally separated from each other and from other portions of the blank by way of knife or die cuts **220** to **224** and vertically from other portions of the blank by way of knife or die cuts **230** to **233**, which knife or die cuts extend through the adhesive layer but not through the backing layer. At least one of lines **240** to **243** is a perforation line extending to but not through the backing sheet, such that at least one of auxiliary labels **210** to **213** is separated from the backing sheet simultaneously with the removal of main label **200** from the backing sheet. Any of lines **240** to **243** which are not perforation lines, if any, are knife or die cuts extending to the backing sheet, such that the respective auxiliary labels are completely separated from each other as well as from any other portions of the blank.

The embodiment of FIGS. 6 and 7 differs from the FIG. 5 embodiment in that auxiliary labels **310** to **313** are vertically rather than horizontally disposed with respect to the main label **300**. Thus each of lines **320** to **328** is a knife or die cut extending through adhesive **84** to but not through backing sheet **80**, at least line **330** of lines **330** to **333** is a perforation line extending to but not through back sheet **80**, and any of lines **331** to **333** which are not perforation lines, if any, are knife or die cuts extending to but not through the backing sheet, such that any respective auxiliary label is completely separated, and therefore separately removable, from any other portion of the blank. With such a construction, at least one but optionally up to all of the auxiliary labels may be removed from the backing sheet simultaneously with the main label and any unused but removed auxiliary labels, if any, may be subsequently and easily separated from the main and/or used auxiliary label(s). In a preferred embodiment of the FIGS. 6 and 7 embodiment, lines **330** and **331** are perforated lines and lines **332** and **333** are die cuts, such that two auxiliary labels **310** and **311** are simultaneously removed from back sheet **80** with main label **302**.

6

The embodiment of FIG. 8 illustrates a blank **400** of which the blank of the FIG. 6 embodiment is one component **410**. Additional components **415** and **420** of the FIG. 8 embodiment are 5 additional separately removable adhesive labels.

As described in detail above, in carrying out a method of labeling utilizing blank forms according to the invention, the user causes the desired information to be printed on the main label and, optionally, on one or more auxiliary labels, simultaneously removes the printed main label and at least one auxiliary label from the backing sheet, separates any simultaneously removed but unused auxiliary label(s), and simultaneously applies the main label and any remaining, i.e., used, auxiliary label(s) to another surface. When used in a pharmacy application as a labeling system for prescription drugs, any used auxiliary labels comprise warning labels to the user of the drug dispensed in the container to which the labels are affixed.

Thus, the present invention has been described with reference to the drawings with respect to presently preferred embodiments. As such, the present invention permits, for example, the existing computer system of a pharmacy to execute a label set as usual while the software of the present invention adds information by which laser printer **26** will print any warning labels and an advisory leaflet corresponding to the drug being dispensed. The one piece wrap-around pressure sensitive label for the drug container optionally combines the main drug container label with one or more selected warning labels.

Other modifications and enhancements of the present invention would be obvious to those skilled in the art.

We claim:

**1**. A blank for use with a printer for printing labels, said blank comprising:

a label laminate comprising

a backing sheet;

a removable label sheet having a front side that is printed on with the printer and a back side;

a pressure-type adhesive on said back side of said label sheet, said adhesive removably adhering said label sheet to said backing sheet and after said label sheet is removed from said backing sheet being able to adhere said label sheet to another surface;

said removable label sheet comprising a main label and a plurality of auxiliary labels smaller than said main label and means permitting at least one but less than all of said auxiliary labels to be simultaneously removable from said backing sheet with said main label and subsequently readily separable from said main label; and

at least one further label in addition to said main label and said auxiliary labels, said further label being substantially completely separated from all other portions of said label sheet by die cuts substantially surrounding said further label and extending through said label sheet and said adhesive to said backing sheet.

**2**. A blank according to claim **1** wherein said means comprises a perforated-line tear line extending through said label sheet and said adhesive to said backing sheet and separating said main label and at least a first auxiliary label.

**3**. A blank according to claim **2** comprising four auxiliary labels.

**4**. A blank according to claim **3** wherein said means permit more than one of said auxiliary labels to be simultaneously removable with and subsequently readily separable from said main label, and said means are perforated-

6,036,231

**7**

line tear lines between said main label and a first auxiliary label and between said first auxiliary label and a second auxiliary label, said perforated-line tear lines extending through said label sheet and said adhesive to said backing sheet.

**5.** A blank for use with a printer for printing labels, said blank comprising:

a label laminate comprising

a backing sheet;

a removable label sheet having a front side that is printed on with the printer and a back side;

a pressure-type adhesive on said back side of said label sheet, said adhesive removably adhering said label sheet to said backing sheet and after said label sheet is removed from said backing sheet being bale to adhere said label sheet to another surface;

said removable label sheet comprising a main label having a surface for receiving printing thereon in a first direction and a plurality of blank auxiliary labels smaller than said main label, and said auxiliary labels being elongated in a second direction lateral to the first direction and each having a surface for receiving printing thereon in the second direction;

means permitting at least one but less than all of said auxiliary labels to be simultaneously removable from said backing sheet with said main label and subsequently readily separable from said main label; and

wherein at least one auxiliary label not simultaneously removable with said main label is substantially completely separated from all other portions of said label sheet by die cuts substantially surrounding said auxiliary label and extending through said label sheet and said adhesive to said backing sheet.

**6.** A blank according to claim **5** in which said label further comprises at least one further label in addition to said main label and said auxiliary labels, said further label being substantially completely separated from all other portions of said label sheet by die cuts substantially surrounding said further label and extending through said label sheet and said adhesive to said backing sheet.

**7.** A blank for use with a printer for printing information and labels, said blank comprising:

a sheet having a front side that is printed on with the printer and having a back side, said sheet having a top edge and a bottom edge which together define a generally horizontal direction, and having two side edges which together define a generally vertical direction;

said sheet comprising a first portion and a second portion divided by a first, generally vertically extending tear line that extends from said top edge to said bottom edge;

said first portion comprising plain paper for receiving printed text,

said second portion comprising

a backing sheet;

a removable label sheet having a front side that is printed on with the printer and a back side;

a pressure-type adhesive on said back side of said label sheet, said adhesive removably adhering said label sheet to said backing sheet and after said label sheet is removed from said backing sheet being able to adhere said label sheet to another surface;

said removable label sheet comprising a main label and a plurality of auxiliary labels smaller than said main label and means permitting at least one but less than

**8**

all of said auxiliary labels to be simultaneously removable from said backing sheet with said main label and subsequently readily separable from said main label; and

wherein at least one auxiliary label not simultaneously removable with said main label is substantially completely separated from all other portions of said label sheet by die cuts substantially surrounding said auxiliary label and extending through said label sheet and said adhesive to said backing sheet.

**8.** A blank according to claim **7**, wherein said means comprises a perforated-line tear line extending through said label sheet and said adhesive to said backing sheet and separating said main label and at least a first auxiliary label.

**9.** A blank according to claim **8** comprising four auxiliary labels.

**10.** A blank according to claim **9** wherein said means permit more than one of said auxiliary labels to be simultaneously removable with and subsequently readily separable from said main label, and said means are perforated-line tear lines between said main label and a first auxiliary label and between said first auxiliary label and a second auxiliary label, said perforated-line tear lines extending through said label sheet and said adhesive to said backing sheet.

**11.** A blank according to claim **7**, wherein at least one auxiliary label not simultaneously removable with said main label is substantially completely separated from all other portions of said label sheet by die cuts substantially surrounding said auxiliary label and extending through said label sheet and said adhesive to said backing sheet.

**12.** A form according to claim **10** in which said label laminate further comprises at least one further label in addition to said main drug container label and said drug warning labels, said further label being substantially completely separated from all other portions of said label sheet by die cuts substantially surrounding said further label and extending through said label sheet and said adhesive to said backing sheet.

**13.** A blank for use with a printer for printing labels, said blank comprising:

a label laminate comprising

a backing sheet;

a removable label sheet having a front side that can be printed on with the printer and back side; and

a pressure-type adhesive on said back side of said label sheet, said adhesive removably adhering said label sheet to said backing sheet and after said label sheet is removed from said backing sheet being able to adhere said label sheet to another surface;

said removable label sheet comprising a main label and four auxiliary labels smaller than said main label and means permitting two of said four auxiliary labels to be simultaneously removable from said backing sheet with said main label and subsequently readily separable from said main label and from each other.

**14.** A blank according to claim **13**, wherein said main label and said two simultaneously removable auxiliary labels are each separated from each other by perforated lines.

**15.** A blank for use with a printer for the simultaneous printing both a main container label and drug-specific warning labels for use on containers for drugs dispensed by a pharmacist, said blank comprising:

a label laminate comprising

a backing sheet;

a removable label sheet having a front side that is printed on with the printer and back side;

6,036,231

**9**

a pressure-type adhesive on said back side of said label sheet, said adhesive removably adhering said label sheet to said backing sheet and after said label sheet is removed from said backing sheet being able to adhere said label sheet to another surface;

said removable label sheet comprising a main label for said container for accepting prescription-specific information relating to the contained drug, multiple auxiliary labels smaller than said main label for accepting drug-warning information specifically

**10**

relating to the contained drug, and means permitting at least two of said auxiliary labels to be simultaneously removable from said backing sheet with said main label and subsequently readily separable from said main label and from each other.

16. A blank according to claim 15, wherein said main label and said two subsequently removable auxiliary labels are each separated from each other by perforated lines.

\* \* \* \* \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.          : 6,036,231                                    Page 1 of 1
APPLICATION NO. : 09/224329
DATED                  : March 14, 2000
INVENTOR(S)        : Richard W. Foote et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Title page, item [63]
Under Related Application Data:

Please insert after "Pat. No. 5,642,906" - - which in turn is a continuation - in - part of Application Serial Number 08/121,415 filed on September 16, 1993 (abandoned). - - therefore.

Signed and Sealed this

Twenty-second Day of August, 2006

JON W. DUDAS
*Director of the United States Patent and Trademark Office*



US006715796B2

| (12) | United States Patent | (10) Patent No.: | US 6,715,796 B2 |
|---|---|---|---|
| | Foote et al. | (45) Date of Patent: | *Apr. 6, 2004 |

(54) **METHOD FOR SIMULTANEOUSLY PREPARING PHARMACY VIAL LABEL AND DRUG-SPECIFIC WARNING LABELS**

(75) Inventors: **Richard W. Foote**, New Smyrna Beach, FL (US); **Carlos R. Young**, Bradenton, FL (US)

(73) Assignee: **ABP Patent Holdings, LLC**, New Smyrna Beach, FL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **09/525,268**

(22) Filed: **Mar. 13, 2000**

(65) **Prior Publication Data**

US 2003/0111837 A1 Jun. 19, 2003

**Related U.S. Application Data**

(63) Continuation of application No. 09/224,329, filed on Dec. 31, 1998, now Pat. No. 6,036,231, which is a continuation of application No. 08/867,965, filed on Jun. 3, 1997, now Pat. No. 5,855,395, which is a continuation of application No. 08/504,765, filed on Jul. 20, 1995, now Pat. No. 5,642,906, which is a continuation-in-part of application No. 08/121,415, filed on Sep. 16, 1993, now abandoned.

(51) Int. Cl.⁷ ................................................. **B42D 15/00**

(52) U.S. Cl. ............................. **283/67**; 40/310; 40/638; 206/570; 281/5; 283/81; 283/101; 428/43

(58) Field of Search ............................. 40/299.01, 310, 40/306, 638; 206/570; 281/2, 5; 283/67, 70, 74, 79, 81, 101, 105, 900, 61, 62; 428/42.1, 43

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,021,060 | A | * | 5/1977 | Seeley et al. ............. 282/28 R |
| 4,621,729 | A | * | 11/1986 | Jackson ....................... 206/37 |
| 4,910,058 | A | * | 3/1990 | Jameson ..................... 428/42 |
| 4,976,351 | A | * | 12/1990 | Mangini et al. ......... 206/232 |
| 4,983,438 | A | * | 1/1991 | Jameson ..................... 428/42 |
| 5,056,827 | A | * | 10/1991 | Sasso ........................ 283/105 |
| 5,129,682 | A | * | 7/1992 | Ashby ......................... 283/81 |
| 5,328,208 | A | * | 7/1994 | Garrison ................... 283/105 |
| 5,642,906 | A | * | 7/1997 | Foote et al. ................ 283/67 |
| 5,855,395 | A | * | 1/1999 | Foote et al. ................ 283/67 |
| 6,036,231 | A | * | 3/2000 | Foote et al. ................ 283/67 |

* cited by examiner

Primary Examiner—Monica Carter

(74) Attorney, Agent, or Firm—Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.

(57) **ABSTRACT**

A method for preparing both main label and warning label portions for a container useful in dispensing drugs by a pharmacist in which the main label portion contains specific drug or patient information and the warning label portion contains one or more warnings specific to the drug or patient information includes the steps of providing a backing sheet having the main label portion and the warning label portion releasably adhered thereto, printing the drug or patient information on the main label portion and the drug-specific information on the warning label during only one printing pass, and then affixing both the main label portion and the warning label portion to a drug container.

**11 Claims, 4 Drawing Sheets**



08CV1726

JUDGE MORAN      YM

MAGISTRATE JUDGE COLE



*FIG. 1*



*FIG. 2*



*FIG. 3*

*FIG.4*



1

# METHOD FOR SIMULTANEOUSLY PREPARING PHARMACY VIAL LABEL AND DRUG-SPECIFIC WARNING LABELS

This application is a continuation of appln. Ser. No. 09/224,329 filed Dec. 31, 1998, now U.S. Pat. No. 6,036,231 which is a continuation of appln. Ser. No. 08/867,965 filed Jun. 3, 1997, now U.S. Pat. No. 5,855,395, which is a continuation of appln. Ser. No. 08/504,765 filed Jul. 20, 1995, now U.S. Pat. No. 5,642,906, which is a continuation-in-part of appln. Ser. No. 08/121,415 filed Sep. 16, 1993, abandoned.

## FIELD OF THE INVENTION

This invention relates to paper blanks for use with a printer in a computer system, and in particular relates to a compound paper blank to be printed on by a computer printer.

## BACKGROUND OF THE INVENTION

Labels having pressure sensitive adhesive have been applied to drug containers for a long time by the pharmaceutical industry to identify the customer, the doctor, the drug being dispensed, and the frequency of the dosage. These labels usually can be purchased in bundles that can be fed into a computer driven printer. The information to be printed on one of the labels is either typed into the computer using a conventional pharmacy computer program or is retrieved from a stored record having been previously typed into the computer memory using the pharmacy computer program. Such a computer program also has automatically printed out receipts for the customer and records for the pharmacy.

The pharmaceutical industry has also been applying oblong or rectangular warning labels to the drug containers for some time. These warning labels warn the customer about certain events or provide instructions involving the prescribed drug. For example, a warning label may carry the message:

MAY CAUSE DROWSINESS; ALCOHOL MAY INTENSIFY THIS EFFECT. USE CARE WHEN OPERATING A CAR OR DANGEROUS MACHINERY.

The warning labels have been supplied to the pharmaceutical industry for some time in rolls of the same message.

Pharmacies have also been supplying customers with an instruction sheet containing information about the drugs they are purchasing. One type of such labels carry the brand name PAL (Patient Advisory Leaflet).

The prior art also contains references which teach the use of a computer system to generate prescription labels printed by a computer driven printer. Such references include the following U.S. patents, which are incorporated herein by reference: Baum U.S. Pat. No. 4,918,604; Olodort et al. U.S. Pat. No. 4,875,174; and McKee U.S. Pat. No. 4,972,657. The prior art also contains references which disclose a manual form having an adhesive label portion used in combination for record keeping and generating a label to be applied to a drug container. Examples of U.S. patents, which are incorporated herein by reference, disclosing such forms are the Lockhart patents U.S. Pat. Nos. 4,277,089 and 4,159,129; and the Biava et al. U.S. Pat. No. 4,799,712.

However, there is no known prior art reference which provides a blank for a computer printer that contains portions for both a removable prescription drug label and a removable warning label with portions for other printed

2

information. Such a system would reduce package costs, provide greater flexibility, and be compatible with existing computer software used by pharmacies.

## SUMMARY OF THE INVENTION

Accordingly the present invention is designed to provide a multi-part blank which can be fed in a computer driven printer and when printed, will contain all of the parts needed for a complete set. Such a set contains a peelable vial label having a pressure sensitive adhesive connected to removable strips of computer selected warning labels also having a pressure sensitive adhesive. The set also contains portions for printed information needed by both the pharmacy and the customer.

The present invention provides a printer blank which can cut expenses, reduce errors, and cut time in preparing records and drug containers for customers. In one particular embodiment of the invention, a single sheet of multisectional paper blank can be fed into a laser printer and on that one sheet there will be printed a drug advisory leaflet; no, one or more than one warning labels having a pressure sensitive adhesive on its back side for easy application to a drug container, and a drug container label containing drug, customer, and pharmacy information. This blank in one pass through the laser printer contains all of the necessary records and parts for the entire drug transaction.

According to one embodiment, the present invention comprises a blank for use with a printer for printing information and labels for drug containers. The blank comprises a sheet of a material having a front side that can be printed on with the printer, a back side, a top and bottom edge which together define a generally horizontal direction, and two side edges which together define a generally vertical direction. The sheet includes at least a first portion and a second portion divided by a first, generally vertically extending tear line or tear line that extends from the top edge to the bottom edge. In the first portion the printer prints text about the particular drug being prescribed, and in the second portion, which includes a label laminate divided into a first section and a second section by a generally horizontal, second tear line. The second section is further divided into a plurality of horizontal strips by at least two generally horizontal tear lines which extend from the first tear line to one of the side edges of the blank. The laminate is comprised of a backing sheet, a removable label sheet having a front side that can be printed on with the printer and a back side, and a pressure-type adhesive on the back side of said label sheet.

Other advantages, features, and details of the present invention will be set forth in or apparent from the detailed description thereof contained hereinbelow.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is an electronic block diagram of a prototype computer system used to demonstrate the present invention;

FIG. 2 is a plan view of a blank in accordance with the present invention before it has been printed on;

FIG. 3 is an enlarged, not-to-scale, cross-sectional view taken along lines 3—3 of FIG. 2 in which certain layers have been shown thicker in order to depict the details of construction;

FIG. 4 is a plan view of a blank that has indicia printed on it by a computer driven laser printer;

FIGS. 5, 6 and 8 are plan views of other blanks in accordance with the present invention; and

FIG. 7 is an enlarged, not-to-scale, cross-sectional view taken along lines 7—7 of FIG. 6 in which certain layers have been shown thicker in order to depict the details of construction.

3

## DESCRIPTION OF THE PREFERRED EMBODIMENT

With reference now to the drawings in which like numerals are used to represent like elements throughout the several views, and in particular with reference to FIG. 1, a computer system 10 is depicted for generating a completed form such as shown in FIG. 4. Computer system 10 is comprised of a conventional host computer 12 having a conventional keyboard 14 for the manual input of information, a conventional computer monitor 16 for the output of information and a conventional external memory 18, which can be a conventional hard disk system. Host computer 12 has an input/output port 20 and can be an IBM compatible computer type using an INTEL brand 80486 DX microprocessor with 8 Mega-bytes of internal memory. Memory 18 holds a number of data bases, such as a customer data base containing customer information and a store data base containing the pharmacy's inventory control information. Memory 18 also holds a conventional pharmaceutical computer program. The program is used by pharmacies to generate the customer data base and store data base, and to extract information contained in these data bases and combine it with information entered from keyboard 14 by a pharmacist to produce an output to drive a printer to print a conventional drug label.

Connected to host computer through input/output port 20 is a supplemental computer 22. Supplemental computer 22 can be identical in configuration to host computer 12. Connected to supplemental computer 22 is a conventional external memory 24 and a conventional laser printer 26, such as a Hewlett-Packard model Series 2 laser printer. Stored in memory 24 are an NDC (National Drug Code) data base containing a standardized drug code list, a data base containing information for the customer about each prescribed drug, such as the commercially available C-PAL® data base, and a data base of warning labels, including unique logos and icons (see, for example, FIG. 4). Also contained in memory 24 is a program which permits supplemental computer to intercept the printer information from host computer 12, to reformat the information, to enter the C-PAL® and warning label data bases to get the related information, and to regenerate the printer information with the incorporated C-PAL® and warning label information.

Computer system 10 is depicted in FIG. 1 as having two computers and it is so configured because it has been designed to complement, upgrade and modify an existing pharmacy computer system that has been using commercially available software. However, an alternative embodiment of the invention (not depicted) is implemented on, or includes, a single computer system in which supplemental computer 22 is combined with host computer 12, supplemental computer memory 24 is combined with host computer memory 18, and a single computer program is used both for the conventional pharmacy inventory control, accounting and report generating tasks and for the printing of a completed form, such as depicted in FIG. 4.

A blank or form 50 in accordance with the present invention is depicted in FIGS. 2 and 3. Blank 50 is preferably made from a flexible, conventional stock material. Blank 50 has a front side 52 which can receive and retain "ink" or print from printer 26 and a back side 54 (FIG. 3). As shown in FIG. 2, blank 50 has a top edge 56 and a bottom edge 58 parallel thereto which are arbitrarily used to define the-horizontal direction in blank 50. Blank 50 also has a left side 60 and a right side 62 parallel thereto which are arbitrarily used to define the vertical direction in blank 50. In a presently preferred embodiment, blank 50 is made of

4

paper and is essentially a square with each side having a length of 8.5 inches (21.59 cm). Alternatively, blank 50 can be made from a plastic or other thin sheet material which can be printed on.

Blank 50 is comprised of a first sheet 64 and a second sheet 66 which have respective overlapping strips 68 and 70 that are adhered to one another with a conventional heat set adhesive 72, as shown in FIG. 3.

Strip 68 is defined not only by its overlapping strip 70, but also by a vertically extending tear line 74 that extends from top edge 56 to bottom edge 58. Tear line 74 can be a score line, but preferably is a perforation line with the perforations extending completely through first sheet 64. Thus, as seen on front side 52 of blank 50, it can also be said that tear line 74 divides blank 50 into a first portion 76, which is coextensive with first sheet 64 less strip 68, and a second portion 78 which is coextensive with second sheet 66 including strip 70.

As depicted in FIG. 3, second sheet 66 is comprised of a laminate and has a backing 80 and a paper top layer 82. Backing 80 in the presently preferred embodiment is a paper product having an embedded plastic top portion or coated with a plastic film (not shown). Attached to the underside of top layer 82 is a conventional pressure adhesive 84. By appropriately selecting top layer 82, adhesive 84 and backing 80, adhesive 84 removably adheres top layer 82 to backing 80, and after top layer 82 is removed from said backing sheet is able to adhere more permanently top layer 82 to a container (not shown), which can be a conventional plastic bottle in which drugs are dispensed.

As seen in FIG. 2, when viewed together with FIG. 4, first portion 76 is much larger in the horizontal direction than second portion 78. In a presently preferred embodiment, first sheet 64 has a width of 6⅝th inches (16.83 cm) and first portion 76 has a width of 6⅜ inches (16.19 cm). First portion 76 is divided into three sections, 86, 88 and 90 by a vertical tear line 92 and by a short horizontal tear line 94. Tear line 92 is a perpendicular bisector of tear line 92, which is parallel to tear line 74 and similarly extends from top edge 56 to bottom edge 58. In a preferred embodiment of the invention, tear lines 92 and 94 are perforation lines with the perforation extending completely through first sheet 64. As shown in FIG. 4, section 86 is the largest section and is used to contain the text of a Patient Advisory Leaflet. Sections 88 and 90 are obviously of equal size and they are each used to contain the text of a customer receipt which can be used for financial records.

Second portion 78 is divided into a plurality of vertically arranged portions by a plurality of horizontal tear lines. In the present embodiment there are seven such portions denoted 96, 98, 100, 102, 104, 106 and 108 created by six tear lines 110, 112, 114, 116, 118, and 120. In a preferred embodiment, tear lines 110, 112, 114, 116 and 120 extend only through top layer 82 and attached layer of adhesive 84 and are perforation lines. On the other hand, tear line 118 in a preferred embodiment is a perforation line with the perforations extending completely through second sheet 66. Portion 96 is a wrap-around label to be applied to a drug container. Portions 98, 100, 102 and 104 are four blanks, none, some or all of which may be used to contain design and word indicia representing warning labels to be applied to a drug container. Portion 106 is unused filler.

Portion 108 is vertically bisected by a vertical tear line 122 to create vertically extending parts 124 and 126. In a preferred embodiment, tear line 122 is a perforation line with the perforations extending completely through second

5

sheet 66. Part 124 is used to obtain a third party signature and also to contain information about the particular prescription. Part 126 can be used as an adhesive pharmacy record label to be applied to an appropriate ledger page (not shown).

The advantages to having tear lines 74, 92, 94, 118 and 122 extend completely through their respective sheets 64 and 66 is that blank 50 can be easily and quickly divided into five portions, each with an entirely different purpose. Portions 86 (the patient advisory leaflet), 88 and 90 are adhesive free and are given to the customer. Combined portions 96, 98, 100, 102 104 contain indicia having the information necessary for the container of the drug being dispensed, and the adhesive top layer 82 can be removed as one piece from backing 80, the unused warning label portions removed, and the remaining piece applied to the drug container. Finally, adhesive parts 124 and 126 can be selectively removed from their piece of backing 80 and applied to the appropriate pharmacy ledger.

The number of warning label blanks provided is somewhat arbitrary, except that based upon prior experience most druggist do not select more than four such labels for any particular drug. obviously, the number of blanks could be larger or smaller if necessary, and the unused blanks would be separated and discarded before the drug label, portion 98, and used warning labels, portions 98, 100, 102 and 104 are applied.

In an alternative embodiment, portion 108 could be divided into three vertically extending parts by two tear lines so that the signature section could be separated from the pharmacy record label.

The further embodiments depicted in FIGS. 5–8 may be used alone as illustrated or as alternative portions of the particular embodiment described above.

The FIG. 5 embodiment comprises a main label 200 and auxiliary labels 210 to 213. Auxiliary labels 210 to 213, which are horizontally disposed with respect to main label 200, are horizontally separated from each other and from other portions of the blank by way of knife or die cuts 220 to 224 and vertically from other portions of the blank by way of knife or die cuts 230 to 233, which knife or die cuts extend through the adhesive layer but not through the backing layer. At least one of lines 240 to 243 is a perforation line extending to but not through the backing sheet, such that at least one of auxiliary labels 210 to 213 is separated from the backing sheet simultaneously with the removal of main label 200 from the backing sheet. Any of lines 240 to 243 which are not perforation lines, if any, are knife or die cuts extending to the backing sheet, such that the respective auxiliary labels are completely separated from each other as well as from any other portions of the blank.

The embodiment of FIGS. 6 and 7 differs from the FIG. 5 embodiment in that auxiliary labels 310 to 313 are vertically rather than horizontally disposed with respect to the main label 300. Thus each of lines 320 to 328 is a knife or die cut extending through adhesive 84 to but not through backing sheet 80, at least line 330 of lines 330 to 333 is a perforation line extending to but not through back sheet 80, and any of lines 331 to 333 which are not perforation lines, if any, are knife or die cuts extending to but not through the backing sheet, such that any respective auxiliary label is completely separated, and therefore separately removable, from any other portion of the blank. With such a construction, at least one but optionally up to all of the auxiliary labels may be removed from the backing sheet simultaneously with the main label and any unused but

6

removed auxiliary labels, if any, may be subsequently and easily separated from the main and/or used auxiliary label (s). In a preferred embodiment of the FIGS. 6 and 7 embodiment, lines 330 and 331 are perforated lines and lines 332 and 333 are die cuts, such that two auxiliary labels 310 and 311 are simultaneously removed from back sheet 80 with main label 302.

The embodiment of FIG. 8 illustrates a blank 400 of which the blank of the FIG. 6 embodiment is one component 410. Additional components 415 and 420 of the FIG. 8 embodiment are additional separately removable adhesive labels.

As described in detail above, in carrying out a method of labeling utilizing blank forms according to the invention, the user causes the desired information to be printed on the main label and, optionally, on one or more auxiliary labels, simultaneously removes the printed main label and at least one auxiliary label from the backing sheet, separates any simultaneously removed but unused auxiliary label(s), and simultaneously applies the main label and any remaining, i.e., used, auxiliary label(s) to another surface. When used in a pharmacy application as a labeling system for prescription drugs, any used auxiliary labels comprise warning labels to the user of the drug dispensed in the container to which the labels are affixed.

Thus, the present invention has been described with reference to the drawings with respect to presently preferred embodiments. As such, the present invention permits, for example, the existing computer system of a pharmacy to execute a label set as usual while the software of the present invention adds information by which laser printer 26 will print any warning labels and an advisory leaflet corresponding to the drug being dispensed. The one piece wrap-around pressure sensitive label for the drug container optionally combines the main drug container label with one or more selected warning labels.

Other modifications and enhancements of the present invention would be obvious to those skilled in the art.

We claim:

1. A method for preparing both main label and warning label portions for a container useful in dispensing drugs by a pharmacist, in which the main label portion contains specific drug or patient information and the warning label portion contains one or more warnings specific to the drug or patient information contained on the main label portion, the method comprising the steps of:

providing a backing sheet having the main label portion and the warning label portion releasably adhered thereto, both the main label portion and the warning label portion having respective outer surfaces for receiving printed information thereon;

printing the drug or patient information on the main label portion and the drug-specific information on the warning label during only one printing pass;

removing both the main label portion and the warning label portion from the backing sheet; and thereafter

affixing both the main label portion and the warning label portion to a drug container.

2. The method recited in claim 1 further comprising the step of removably attaching the warning label portion along a side of the main label portion such that the removal of the main label portion permits the simultaneous removal of at least a part of the warning label portion.

3. The method recited in claim 1 further comprising the step of printing text on the warning label portion in a direction generally lateral to the direction of printing along the main label portion.

7

**4**. The method recited in claim **1** further comprising the step of forming the main label portion and the warning label portion as an elongated composite label.

**5**. The method recited in claim **1** wherein the warning label portion comprises two or more individual warning labels, further comprising the steps of partially perforating the warning label portion to form a tear line between adjacent warning labels, whereby two or more adjacent individual warning labels may be removed together from the backing sheet and either (a) affixed together onto the drug container or (b) removed together from the backing sheet and then separated, or (c) separated from each other as one or more individual labels are removed from the backing sheet.

**6**. The method recited in claim **5** further comprising the steps of extending a sheet of printable paper from the main label and warning label portions, and printing a patient advisory leaflet onto an outer surface of the paper sheet during the one printing pass.

**7**. The method recited in claim **6** further comprising the step of providing an auxiliary label portion releasably adhered to the backing sheet, and printing auxiliary information thereon during the one printing pass.

**8**. A method for the realtime preparation of a pharmacy label set having a main vial label containing customer-specific drug and dosage information printed thereon and one or more warning labels each containing a drug-specific warning thereon, the method comprising the steps of:

provding a printer;

connecting computer means and database means with the printer so as to supply an electronic data input to the printer containing the customer-specific drug and dosage information and the drug-specific warning information;

8

providing a plurality of blank forms each of which has an upper surface and a lower surface with an adhesive backing on the lower surface, the upper surface of each form defining adjacent printable blank vial label and warning label sections for receiving printing of the customer-specific drug and dosage information and the warning label information, respectively, on the upper surface thereof;

passing each form through the printer and, in one pass, printing—

(a) the customer-specific drug and dosage information on the vial label section of the form; and

(b) drug-specific warning information on at least one warning label of the section of the form; and

attaching the vial label section and at least a portion of the warning label section to a drug container.

**9**. The method recited in claim **8**, further comprising the step of processing each form so that the vial label section and the warning label section are removable together from a backing sheet.

**10**. The method recited in claim **9**, further comprising the step of processing each form so that the vial label section is removable together with an adjacent warning label.

**11**. The method recited in claim **9**, further comprising the step of processing each form so that at least one warning label is removable with the vial label section and readily separated therefrom.

\* \* \* \* \*

US007225052B2

(12) **United States Patent**
Foote et al.

(10) **Patent No.:** **US 7,225,052 B2**
(45) **Date of Patent:** *May 29, 2007

(54) **METHOD FOR SIMULTANEOUSLY PREPARING PHARMACY VIAL LABEL AND DRUG-SPECIFIC WARNING LABELS**

(75) Inventors: **Richard W. Foote**, New Smyrna Beach, FL (US); **Richard Young**, Bradenton, FL (US)

(73) Assignee: **ABP Patent Holdings, LLC**, New Smyrna Beach, FL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **10/819,247**

(22) Filed: **Apr. 5, 2004**

(65) **Prior Publication Data**

US 2004/0193454 A1     Sep. 30, 2004

**Related U.S. Application Data**

(63) Continuation of application No. 09/525,268, filed on Mar. 13, 2000, now Pat. No. 6,715,796, which is a continuation of application No. 09/224,329, filed on Dec. 31, 1998, now Pat. No. 6,036,231, which is a continuation of application No. 08/867,965, filed on Jun. 3, 1997, now Pat. No. 5,855,395, which is a continuation of application No. 08/504,765, filed on Jul. 20, 1995, now Pat. No. 5,642,906, which is a continuation-in-part of application No. 08/121,415, filed on Sep. 16, 1993, now abandoned.

(51) **Int. Cl.**
*G06F 17/00* (2006.01)

(52) **U.S. Cl.** .......................... 700/235; 40/310; 40/638; 283/67

(58) **Field of Classification Search** ............... 700/231, 700/235; 283/100, 101, 103, 105
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,655,026 A | * | 4/1987 | Wigoda ......................... 53/55 |
| 4,799,712 A | * | 1/1989 | Biava et al. ................... 462/67 |
| 5,048,870 A | * | 9/1991 | Mangini et al. .............. 283/81 |
| 5,147,699 A | * | 9/1992 | Browning et al. .......... 283/105 |
| 5,178,419 A | * | 1/1993 | Bolnick et al. ............. 283/105 |
| 5,328,208 A | * | 7/1994 | Garrison ..................... 283/105 |
| 5,348,061 A | * | 9/1994 | Riley et al. ................. 141/104 |
| 5,390,796 A | * | 2/1995 | Kerfoot, Jr. ............... 206/534 |
| 5,435,600 A | * | 7/1995 | Griffiths et al. ............. 283/101 |

* cited by examiner

*Primary Examiner*—Khoi H. Tran
(74) *Attorney, Agent, or Firm*—Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.

(57) **ABSTRACT**

A method for preparing both main label and warning label portions for a container useful in dispensing drugs by a pharmacist in which the main label portion contains specific drug or patient information and the warning label portion contains one or more warnings specific to the drug or patient information includes the steps of providing a backing sheet having the main label portion and the warning label portion releasably adhered thereto, printing the drug or patient information on the warning label during only one printing pass, and then affixing both the main label portion and the warning label portion to a drug container.

**15 Claims, 4 Drawing Sheets**



08CV1726

JUDGE MORAN     YM

MAGISTRATE JUDGE COLE



*FIG. 1*



FIG. 2

FIG. 3



*FIG.4*



US 7,225,052 B2

1

## METHOD FOR SIMULTANEOUSLY PREPARING PHARMACY VIAL LABEL AND DRUG-SPECIFIC WARNING LABELS

This application is a continuation application and claims priority to U.S. application Ser. No. 09/525,268, filed Mar. 13, 2000, issuing as U.S. Pat. No. 6,715,796 which itself is a continuation of U.S. application Ser. No. 09/224,329, filed Dec. 31, 1998 issuing as U.S. Pat. No. 6,036,231 which itself is a continuation of U.S. application Ser. No. 08/867,965 filed Jun. 3, 1997 issuing as U.S. Pat. No. 5,855,395 which itself is a continuation of U.S. application Ser. No. 08/504, 765 filed Jul. 20, 1995 issuing as U.S. Pat. No. 5,642,906 which itself is a continuation-in-part of U.S. application Ser. No. 08/121,415 filed Sep. 16, 1993 now abandoned all of which are hereby incorporated herein by reference in their entirety, and all commonly owned.

### FIELD OF THE INVENTION

This invention relates to paper blanks for use with a printer in a computer system, and in particular relates to a compound paper blank to be printed on by a computer printer.

### BACKGROUND OF THE INVENTION

Labels having pressure sensitive adhesive have been applied to drug containers for a long time by the pharmaceutical industry to identify the customer, the doctor, the drug being dispensed, and the frequency of the dosage. These labels usually can be purchased in bundles that can be fed into a computer driven printer. The information to be printed on one of the labels is either typed into the computer using a conventional pharmacy computer program or is retrieved from a stored record having been previously typed into the computer memory using the pharmacy computer program. Such a computer program also has automatically printed out receipts for the customer and records for the pharmacy.

The pharmaceutical industry has also been applying oblong or rectangular warning labels to the drug containers for some time. These warning labels warn the customer about certain events or provide instructions involving the prescribed drug. For example, a warning label may carry the message:

MAY CAUSE DROWSINESS; ALCOLHOL MAY INTENSIFY THIS EFFECT. USE CARE WHEN OPERATING A CAR OR DANGEROUS MACHINERY

The warning labels have been supplied to the pharmaceutical industry for some time in rolls of the same message.

Pharmacies have also been supplying customers with an instruction sheet containing information about the drugs they are purchasing. One type of such labels carry the brand name PAL (Patient Advisory Leaflet).

The prior art also contains references which teach the use of a computer system to generate prescription labels printed by a computer driven printer. Such references include the following U.S. patents, which are incorporated herein by reference: Baum U.S. Pat. No. 4,918,604; Olodort et al. U.S. Pat. No. 4,875,174; and McKee U.S. Pat. No. 4,972,657. The prior art also contains references which disclose a manual form having an adhesive label portion used in combination for record keeping and generating a label to be applied to a drug container. Examples of U.S. patents, which are incorporated herein by reference, disclosing such forms

2

are the Lockhart patents U.S. Pat. Nos. 4,277,089 and 4,159,129; and the Biava et al. U.S. Pat. No. 4,799,712.

However, there is no known prior art reference which pro-vides a blank for a computer printer that contains portions for both a removable prescription drug label and a removable warning label with portions for other printed information. Such a system would reduce package costs, provide greater flexibility, and be compatible with existing computer software used by pharmacies.

### SUMMARY OF THE INVENTION

Accordingly the present invention is designed to provide a multi-part blank which can be fed in a computer driven printer and when printed, will contain all of the parts needed for a complete set. Such a set contains a peelable vial label having a pressure sensitive adhesive connected to removable strips of computer selected warning labels also having a pressure sensitive adhesive. The set also contains portions for printed information needed by both the pharmacy and the customer.

The present invention provides a printer blank which can cut expenses, reduce errors, and cut time in preparing records and drug containers for customers. In one particular embodiment of the invention, a single sheet of multi-sectional paper blank can be fed into a laser printer and on that one sheet there will be printed a drug advisory leaflet; no, one or more than one warning labels having a *pressure sensitive adhesive on its back side for easy application to a drug container, and a drug container label containing drug, customer, and pharmacy information. This blank in one pass through the laser printer contains all of the necessary records and parts for the entire drug transaction.

According to one embodiment, the present invention comprises a blank for use with a printer for printing information and labels for drug containers. The blank comprises a sheet of a material having a front side that can be printed on with the printer, a back side, a top and bottom edge which together define a generally horizontal direction, and two side edges which together define a generally vertical direction. The sheet includes at least a first portion and a second portion divided by a first, generally vertically extending tear line or tear line that extends from the top edge to the bottom edge. In the first portion the printer prints text about the particular drug being prescribed, and in the second portion, which includes a label laminate divided into a first section and a second section by a generally horizontal, second tear line. The second section is further divided into a plurality of horizontal strips by at least two generally horizontal tear lines which extend from the first tear line to one of the side edges of the blank. The laminate is comprised of a backing sheet, a removable label sheet having a front side that can be printed on with the printer and a. back side, and a pressure-type adhesive on the back side of said label sheet.

Other advantages, features, and details of the present invention will be set forth in or apparent from the detailed description thereof contained hereinbelow.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is an electronic block diagram of a prototype computer system used to demonstrate the present invention;

FIG. 2 is a plan view of a blank in accordance with the present invention before it has been printed on;

FIG. 3 is an enlarged, not-to-scale, cross-sectional view taken along lines 3–3 of FIG. 2 in which certain layers have been shown thicker in order to depict the details of construction;

**3**

FIG. 4 is a plan view of a blank that has indicia printed on it by a computer driven laser printer;

FIGS. 5, 6 and 8 are plan views of other blanks in accordance with the present invention; and

FIG. 7 is an enlarged, not-to-scale, cross-sectional view taken along lines 7–7 of FIG. 6 in which certain layers have been shown thicker in order to depict the details of construction.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

With reference now to the drawings in which like numerals are used to represent like elements throughout the several views, and in particular with reference to FIG. 1, a computer system 10 is depicted for generating a completed form such as shown in FIG. 4. Computer system 10 is comprised of a conventional host computer 12 having a conventional keyboard 14 for the manual input of information, a conventional computer monitor 16 for output of information and a conventional external memory 18, which can be conventional hard disk system. Host computer 12 has an input/output port 20 and can be an IBM compatible computer type using an INTEL brand 80486 DX microprocessor with 8 Mega-bytes of internal memory. Memory 18 holds a number of data bases, such as a customer data base containing customer information and a store data base containing the pharmacy's inventory control information. Memory 18 also holds a conventional pharmaceutical computer program. The program is used by pharmacies to generate the customer data base and store data base, and to extract information contained in these data bases and combine it with information entered from keyboard 14 by a pharmacist to produce an output to drive a printer to print a conventional drug label.

Connected to host computer through input/output port 20 is a supplemental computer 22. Supplemental computer 22 can be identical in configuration to host computer 12. Connected to supplemental computer 22 is a conventional external memory 24 and a conventional laser printer 26, such as a Hewlett-Packard model the Series 2 laser printer. Stored in memory 24 are an NDC (National Drug Code) data base containing a standardized drug code list, a data base containing information for the customer about each prescribed drug, such as the commercially available C-PAL® data base, and a data base of warning labels, including unique logos and icons (see, for example, FIG. 4). Also contained in memory 24 is a program which permits supplemental computer to intercept the printer information from host computer 12, to reformat the information, to enter the C-PAL® and warning label data bases to get the related information, and to regenerate the printer information with the incorporated C-PAL® and warning label information.

Computer system 10 is depicted in FIG. 1 as having two computers and it is so configured because it has been designed complement, upgrade and modify an existing pharmacy computer system that has been using commercially available software. However, an alternative embodiment of the invention (not depicted) is implemented on, or includes, a single computer system in which supplemental computer 22 is combined with host computer 12, supplemental computer memory 24 is combined with host computer memory 18, and a single computer program is used both for the conventional pharmacy inventory control, accounting and report generating tasks and for the printing of a completed form, such as depicted in FIG. 4.

A blank or form 50 in accordance with the present invention is depicted in FIGS. 2 and 3. Blank 50 is prefer-

**4**

ably made from a flexible, conventional stock material. Blank 50 has a top edge 56 and a bottom edge 58 parallel thereto which are front side 52 which can receive and retain "ink" or print from printer 26 and a back side 54 (FIG. 3). As shown in FIG. 2, blank 50 has a arbitrarily used to define the horizontal direction in blank 50.

Blank 50 also has a left side 60 and a right side 62 parallel thereto which are arbitrarily used to define the vertical direction in blank 50. In a presently preferred embodiment, blank 50 is made of paper and is essentially a square with each side having a length of 8.5 inches (21.59 cm). Alternatively, blank 50 can be made from a plastic or other thin sheet material which can be printed on.

Blank 50 is comprised of a first sheet 64 and a second sheet 66 which have respective overlapping strips 68 and 70 that are adhered to one another with a conventional heat set adhesive 72, as shown in FIG. 3.

Strip 68 is defined not only by its overlapping strip 70, but also by a vertically extending tear line 74 that extends from top edge 56 to bottom edge 58. Tear line 74 can be a score line, but preferably is a perforation line with the perforations extending completely through first sheet 64. Thus, as seen on front side 52 of blank 50, it can also be said that tear line 74 divides blank 50 into a first portion 76, which is coextensive with first sheet 64 less strip 68, and a second portion 78 which is coextensive with second sheet 66 including strip 70.

As depicted in FIG. 3, second sheet 66 is comprised of a 80 in the presently preferred embodiment is a paper product top edge 56 and a bottom edge 58 parallel thereto which are laminate and has a backing 80 and a paper top layer 82. Backing 80 in the presently preferred embodiment is a paper product having an embedded plastic top portion or coated with a plastic film (not shown). Attached to the underside of top layer 82 is a conventional pressure adhesive 84. By appropriately selecting top layer 82, adhesive 84 and backing 80, adhesive 84 removably adheres top layer 82 to backing 80, and after top layer 82 is removed from said backing sheet is able to adhere more permanently top layer 82 to a container (not shown), which can be a conventional plastic bottle in which drugs are dispensed.

As seen in FIG. 2, when viewed together with FIG. 4, first portion 76 is much larger in the horizontal direction than second portion 78. In a presently preferred embodiment, first sheet has a width of 6⅝ inches (16.83 cm) and first portion 76 has a width of 6⅜ inches (16.19 cm). First portion 76 is divided into three sections, 86, 88 and 90 by a vertical tear line 92 and by a short horizontal tear line 94. Tear line 92 is a perpendicular bisector of tear line 92, which is parallel to tear line 74 and similarly extends from top edge 56 to bottom edge 58. In a preferred embodiment of the invention, tear lines 92 and 94 are perforation lines with the perforation extending completely through first sheet 64. As shown in FIG. 4, section 86 is the largest section and is used to contain the text of a Patient Advisory Leaflet. Sections 88 and 90 are obviously of equal and they are each used to contain the text of a customer receipt which can be used for financial records.

Second portion 78 is divided into a plurality of vertically arranged portions by a plurality of horizontal tear lines. In the present embodiment there are seven such portions denoted 96,98, 100,102,104,106 and 108 created by six tear lines 110,112, 114, 116, 118, and 120. In a preferred embodiment, tear lines 110, 112,114, 116 and 120 extend only through top layer 82 and attached layer of adhesive 84 and are perforation lines. On the other hand, tear line 118 in a preferred embodiment is a perforation line with the perfo-

5

rations extending completely through second sheet 66. Portion 96 is a wrap-around label to be applied to a drug container. Portions 98, 100, 102 and 104 are four blanks, none, some or all of which may be used to contain design and word indicia representing warning labels to be applied to a drug container. Portion 106 is unused filler.

Portion 108 is vertically bisected by a vertical tear line 122 to create vertically extending parts 124 and 126. In a preferred embodiment, tear line 122 is a perforation line with the perforations extending completely through second sheet 66. Part 124 is used to obtain a third party signature and also to contain information about the particular prescription. Part 126 can be used as an adhesive pharmacy record label to be applied to an appropriate ledger page (not shown).

The advantages to having tear lines 74, 92, 94, 118 and 122 extend completely through their respective sheets 64 and 66 is that blank 50 can be easily and quickly divided into five portions, each with an entirely different purpose. Portions 86 (the patient advisory leaflet), 88 and 90 are adhesive free and are given to the customer. Combined portions 96, 98, 100, 102 104 contain indicia having the information necessary for the labeling of the drug being dispensed, and the adhesive top layer 82 can be removed as one piece from backing 80, the unused warning label portions removed, and the remaining piece applied to the drug container. Finally, adhesive parts 124 and 126 can be selectively removed from their piece of backing 80 and applied to the appropriate pharmacy ledger.

The number of warning label blanks provided is somewhat arbitrary, except that based upon prior experience most druggist do not select more than four such labels for any particular drug. Obviously, the number of blanks could be larger or smaller if necessary, and the unused blanks would be separated and discarded before the drug label, portion 98, and used warning labels, portions 98, 100, 102 and 104 are applied.

In an alternative embodiment, portion 108 could be divided into three vertically extending parts by two tear lines so that the signature section could be separated from the pharmacy record label.

The further embodiments depicted in FIGS. 5–8 may be used alone as illustrated or as alternative portions of the particular embodiment described above.

The FIG. 5 embodiment comprises a main label 200 and auxiliary labels 210 to 213. Auxiliary labels 210 to 213, which are horizontally disposed with respect to main label 200, are horizontally separated from each other and from other portions of the blank by way of knife or die cuts 220 to 224 and vertically from other portions of the blank by way of knife or die cuts 230 to 233, which knife or die cuts extend through the adhesive layer but not through the backing layer. At least one of lines 240 to 243 is a perforation line extending to but not through the backing sheet, such that at least one of auxiliary labels 210 to 213 is separated from the backing sheet simultaneously with the removal of main label 200 from the backing sheet. Any of lines 240 to 243 which are not perforation lines, if any, are knife or die cuts extending to the backing sheet, such that the respective auxiliary labels are completely separated from each other as well as from any other portions of the blank.

The embodiment of FIGS. 6 and 7 differs from the FIG. 5 embodiment in that auxiliary labels 310 to 313 are vertically rather than horizontally disposed with respect to the main label 300. Thus each of lines 320 to 328 is a knife or die cut extending through adhesive 84 but not through backing sheet 80, at least line 330 of lines 330 to 333 is a

6

perforation line extending to but not through back sheet 80, and any of lines 331 to 333 which are not perforation lines, if any, are knife or die cuts extending to but not through the backing sheet, such that any respective auxiliary label is completely separated, and therefore separately removable, from any other portion of the blank. With such a construction, at least one but optionally up to all of the auxiliary labels may be removed from the backing sheet simultaneously with the main label and any unused but removed auxiliary labels, if any, may be subsequently and easily separated from the main and/or used auxiliary label(s). In a preferred embodiment of the FIGS. 6 and 7 embodiment, lines 330 and 331 are perforated lines and lines 332 and 333 are die cuts, such that two auxiliary labels 310 and 311 are simultaneously removed from back sheet 80 with main label 302.

The embodiment of FIG. 8 illustrates a blank 400 of which the blank of the FIG. 6 embodiment is one component 410. Additional components 415 and 420 of the FIG. 8 embodiment are additional separately removable adhesive labels.

As described in detail above, in carrying out a method of labeling utilizing blank forms according to the invention, the user causes the desired information to be printed on the main label and, optionally, on one or more auxiliary labels, simultaneously removes the printed main label and at least one auxiliary label from the backing sheet, separates any simultaneously removed but unused auxiliary label(s), and simultaneously applies the main label and any remaining, i.e., used, auxiliary label(s) to another surface. When used in a pharmacy application as a labeling system for prescription drugs, any used auxiliary labels comprise warning labels to the user of the drug dispensed in the container to which the labels are affixed.

Thus, the present invention has been described with reference to the drawings with respect to presently preferred embodiments. As such, the present invention permits, for example, the existing computer system of a pharmacy to execute a label set as usual while the software of the present invention adds information by which laser printer 26 will print any warning labels and an advisory leaflet corresponding to the drug being dispensed.

The one piece wrap-around pressure sensitive label for the drug container optionally combines the main drug container label with one or more selected warning labels.

Other modifications and enhancements of the presentation will now be obvious to those skilled in the art in view of the above teachings.

That which is claimed is:

1. A method for the real-time preparation at a pharmacy work station of a pharmacy label set having a main vial label containing customer-specific drug and dosage information printed thereon and warning label means containing a drug-specific warning thereon, the method comprising the steps of:

    providing a printer;

    connecting computer means and database means with the printer so as to supply a real-time electronic data input to the printer of the customer-specific drug and dosage information and the drug-specific warning information;

    providing a plurality of blank forms each of which has an upper surface and a lower surface with an adhesive backing on the lower surface, the upper surface of each form containing a printable blank vial label section and a blank warning label section for receiving printing from the printer of the customer-specific drug and

US 7,225,052 B2

7

dosage information and the warning label information from the database means, respectively, on the upper surface thereof;

passing each form through the printer and, in one pass, printing —

   (a) the customer-specific drug and dosage information on the vial label section of the form; and

   (b) any drug-specific warning information on the warning label section of the form which relates to the customer-specific drug; and

attaching the vial label section and at least a portion of the warning label section to a drug container.

**2**. The method recited in claim **1**, further comprising the step of processing each form so that the vial label section and the warning label section are removable together from a backing sheet.

**3**. The method recited in claim **2**, further comprising the step of processing each form so that the vial label section is removable together with an adjacent warning label.

**4**. The method recited in claim **2**, further comprising the step of processing each form so that at least one warning label is removable with the vial label section and readily separated therefrom.

**5**. The method recited in claim **1**, further comprising the steps of:

   storing icons representative of warning label information; and

   printing at least one icon with a corresponding warning label.

**6**. The method recited in claim **1** further comprising the step of removably attaching the warning label section along a side of the vial label section such that the removal of the vial label section permits the simultaneous removal of at least a part of the warning label section.

**7**. The method recited in claim **1** further comprising the step of printing text on the warning label section in a direction generally lateral to the direction of printing along the vial label section.

**8**. The method recited in claim **1** further comprising the step of forming the vial label section and the warning label section as an elongated composite label.

**9**. The method recited in claim **1** wherein the warning label section comprises two or more individual warning labels, further comprising the steps of partially perforating the warning label section to form a tear line between adjacent warning labels, whereby two or more adjacent individual warning labels may be removed together from the

8

backing sheet and either (a) affixed together onto the drug container or (b) removed together and then separated, or (c) separated from each other as one or more individual labels.

**10**. The method recited in claim **9** further comprising the steps of extending a sheet of printable paper from the vial label and warning label sections, and printing patient advisory leaflet data contained in the database means onto an outer surface of the paper sheet during the one printing pass.

**11**. A method for preparing a container useful in dispensing drugs by a pharmacist, in which the container includes an outer surface provided with a main label section for receiving specific drug or patient information and a warning label section for receiving one or more warnings specific to the drug or patient information to be received on the main label section, the method comprising the steps of:

   providing means for imprinting numerals and letters on the main label section and on the warning label section;

   connecting computer means and database means with the imprinting means to supply a real-time electronic data input to the imprinting means of the customer-specific drug and dosage information and the drug-specific warning information;

   passing the main label section and the warning label section through the imprinting means and, in one pass, imprinting —

      (a) the customer-specific drug and dosage information on the main label section; and

      (b) any drug-specific warning information on the warning label section.

**12**. The method recited in claim **11**, further comprising the step of forming the main label section and the warning label section on a printable paper sheet.

**13**. The method recited in claim **12**, further comprising the step of fixing the paper sheet containing the main label section and the warning label section on a backing sheet with a releasable adhesive.

**14**. The method recited in claim **1**, wherein the database means comprises a first database and a supplemental database, and loading the drug-specific warning information in the supplemental database.

**15**. The method recited in claim **11**, wherein the database means comprises a first database and a supplemental database, and loading the drug-specific warning information in the supplemental database.

\* \* \* \* \*

# UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.           : 7,225,052 B2                                    Page 1 of 2
APPLICATION NO.  : 10/819247
DATED                    : May 29, 2007
INVENTOR(S)         : Richard W. Foote et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

| | |
|---|---|
| Abstract, Line 9 | Please insert --on the main label portion and the drug-specific information-- between the words "information" and "on the warning label" |
| Column 1, Line 47 | Please delete "ALCOLHOL" and replace with --ALCOHOL--. |
| Column 1, Line 49 | Please add a period --.-- after the word "MACHINERY". |
| Column 2, Line 4 | Please delete "pro-vides" and replace with --provides--. |
| Column 2, Line 28 | Please delete "*" before the word "pressure". |
| Column 2, Line 53 | Please delete "." after the article "a". |
| Column 3, Line 20 | Please insert --the-- before the word "output". |
| Column 3, Line 40 | Please delete "the" before the word "Series". |
| Column 3, Line 55 | Please insert --to-- after the word "designed". |
| Column 3, Line 60 | Please insert a space between "computer" and "12". |
| Column 4, Line 2 | Please delete "top edge 56, and a bottom edge 58 parallel thereto which are" after the words "Blank 50 has a". |
| Column 4, Line 5 | Please insert --top edge 56, and a bottom edge 58 parallel thereto which are-- between the words "... in FIG. 2, blank 50 has a" and "arbitrarily". |
| Column 4, Line 29 | Please delete "80 in the presently preferred embodiment is a paper product top edge 56 and a bottom edge 58 parallel thereto which are". |
| Column 4, Line 56 | Please insert the word --size-- after the word "equal". |
| Column 4, Line 62 | Please insert a space in front of "98"; in front of "102; in front of "104"; and in front of "106". |
| Column 4, Line 63 | Please insert a space in front of "114". |

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.        : 7,225,052 B2                                    Page 2 of 2
APPLICATION NO. : 10/819247
DATED              : May 29, 2007
INVENTOR(S)      : Richard W. Foote et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Column 5, Line 2        Please delete "wrap=around" and replace with --wrap-around--.

Column 5, Line 22       Please insert a comma --,-- after the number "102"

Column 6, Line 46       Please delete "presentation will now" and replace with --present invention would be--.

Column 6, Line 47 and   Please delete "in view of the above teachings"
Line 48.

Signed and Sealed this

Sixth Day of November, 2007

JON W. DUDAS
*Director of the United States Patent and Trademark Office*

**ALLEN**

**DYER**

**DOPPELT**

**MILBRATH &**

**GILCHRIST**, P.A.

INTELLECTUAL PROPERTY ATTORNEYS

Herbert L. Allen
Robert Dyer
Ava K. Doppelt
Stephen D. Milbrath
Brian R. Gilchrist
Christopher F. Regan
David L. Sigalow
Richard K. Warther
Enrique G. Estévez, Ph.D.
David W. Henry
Michael W. Taylor
John F. Woodson II

Paul J. Ditmyer
Stephen H. Luther
Jeffrey S. Boyles
Ryan T. Santurri
Bridget Heffernan Labutta
Gregory B. Allen
Jack G. Abid
David S. Carus
David W. Magana
Allison R. Imber
Jeremy B. Berman

Of Counsel:
David L. Stewart
Neal J. Blaher

Patent Agents:
Jacqueline E. Hartt, Ph.D.
Carl M. Napolitano, Ph.D.
Justin Sauer

hallen@addmg.com

December 27, 2007

08CV1726
JUDGE MORAN    YM
MAGISTRATE JUDGE COLE

### Via Federal Express #8488 3304 2566

Mr. Greg Wasson, President
Walgreens Co.
200 Wilmot Road
Deerfield, Illinois 60015

     Re:   United States Patents of ABP Patent Holdings, LLC
          Our File No. 18897.6

Dear Mr. Wasson:

    This law firm represents ABP Patent Holdings, LLC in intellectual property matters. Our client holds the following United States Patents:

| Patent No. | Title |
|---|---|
| 5,642,906 | Method of Labelling Prescription Containers |
| 5,642,906 | Reexamination Certificate "Method of Labelling Prescription Containers" |
| 5,855,395 | Pharmacy Label and Record System and Method |
| 6,036,231 | Pharmacy Label and Record System and Method |
| 6,715,796 | Method for Simultaneously Preparing Pharmacy Vial Label and Drug-Specific Warning Labels |

**Orlando Office (Main)**
255 South Orange Ave.
Suite 1401
Orlando, FL 32801
Mail To: P.O. Box 3791
Orlando, FL 32802-3791

tel: 407-841-2330
fax: 407-841-2343

**Jacksonville Office**
4720 Salisbury Rd.
Jacksonville, FL 32256

tel: 904-470-0002
fax: 904-493-6166

**Melbourne Office**
1901 S. Harbor City Blvd.
Suite 507
Melbourne, FL 32901

tel: 321-725-4760
fax: 321-984-7078



www.addmg.com

Mr. Greg Wasson, President
December 27, 2007
Page 2

> 7,225,052   Method for Simultaneously Preparing Pharmacy Vial Label
> and Drug-Specific Warning Labels

Copies of all of these patents are enclosed.

Over the years, ABP Patent Holdings, LLC has granted royalty-bearing licenses to a number of participants in the pharmacy label industry, including Standard Register, NCR, WardKraft, TimeMed, Wallace and Moore. Thus, when Walgreens was utilizing pharmacy labels acquired from one of these licensees, those labels were properly licensed.

However, we understand that Walgreens is no longer purchasing labels from any of the above-identified licensees and we are concerned that Walgreens may be utilizing unlicensed labels. I therefore take this opportunity to provide Walgreens with notification of these patents and to request information regarding the identity of the label purveyor for your company, so that we may approach that company with a licensing offer. On the other hand, ABP Patent Holdings, LLC would be more than happy to negotiate directly with Walgreens if it chooses to do so.

I look forward to your reply to this letter.

Yours very truly,

Herbert L. Allen

HLA/kp
Enclosures
cc: Mr. Richard W. Foote
S:\AIMDOCS\ABPPAT\0018897_6\I87530.WPD